1
2
3
4
5
6
7
8             UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11   GEMCAP LENDING I, LLC,        )   2:14-cv-07937-RSWL-E
                                    )
12                 Plaintiff,       )
                                    )
13        v.                        )   **ORDER re: Defendants'**
                                    )   **Motion to Dismiss** [25]
14                                  )
     QUARLES & BRADY, LLP; JAMES    )
15   GATZIOLIS, and DOES 1 to       )
     10, inclusive,                 )
16                                  )
                   Defendants.      )
17                                  )
                                    )
18   _____)

19

20

21                    __INTRODUCTION__

22        Currently before the Court is Defendants Quarles &

23   Brady, LLP ("Q&B") and James Gatziolis's ("Gatziolis")

24   (collectively, "Defendants") Motion to Dismiss [25]

25   Plaintiff GemCap Lending I, LLC's ("GemCap" or

26   "Plaintiff") Second Amended Complaint in its entirety

27   pursuant to Federal Rule of Civil Procedure 12(b)(6)

28   and to dismiss Defendant Gatziolis for lack of personal

                              1

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Defs.' Mot. Dismiss ("Mot.") 1:1-12.  Defendants' Motion to Dismiss [25] arises out of Plaintiff's action against Defendants for professional malpractice, intentional misrepresentation, negligent misrepresentation, and concealment under California law.  Second Amend. Compl. ("SAC"), ECF No. 24.

The Court, having reviewed all papers submitted and pertaining to this Motion [25], **NOW FINDS AND RULES AS FOLLOWS:** The Court **DENIES** Defendants' Motion to Dismiss [25] in its entirety.

**I. BACKGROUND**

**A.  <u>Factual Background</u>**

1.  <u>Parties</u>

Plaintiff GemCap is incorporated in Delaware and has its principal place of business in Malibu, California.  SAC ¶ 1.  Defendant Q&B is a limited legal partnership based in Milwaukee, Wisconsin.  SAC ¶ 2. Defendant Gatziolis is a partner at Q&B and resides in Illinois.  SAC ¶ 3.

2.  <u>Plaintiff's Allegations in SAC</u>

Plaintiff's claims against Defendants arise out of a 2011 loan agreement that Plaintiff entered into with a third-party borrower.  On November 23, 2011, Plaintiff entered into a Loan and Security Agreement ("Loan Agreement") with borrowers Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, Inc. (collectively, "CropUSA") for a revolving $5,000,000

loan.  SAC ¶ 13.  Defendants served as CropUSA's legal
counsel for the Loan Agreement transaction.  See SAC ¶¶
20-21, 32, 34, 36-37.  The Loan Agreement required
CropUSA to supply Plaintiff with a Legal Opinion and
certain disclosures set forth in a Borrower's
Disclosure Schedule.  SAC ¶¶ 13-15, 20-21, 31-32.
Plaintiff alleges that Defendants prepared the Legal
Opinion Letter ("Opinion Letter") and Borrower's
Disclosure Schedule ("Disclosure Schedule") and made
fraudulent statements or concealments in both
documents, which induced Plaintiff to agree to the
CropUSA loan ("Loan") to Plaintiff's injury when
CropUSA defaulted on the Loan in 2013.  SAC ¶¶ 13-43,
46-75.  Plaintiff alleges that CropUSA owes Plaintiff
over $12,000,000 on the Loan.  SAC ¶ 39.

      a. *Disclosure Schedule Allegations*

     The Loan Agreement required CropUSA to disclose in
writing "certain material facts concerning [CropUSA's]
business operations, assets and contractual
obligations" in a "concurrently submitted Borrower's
Disclosure Schedule."  SAC ¶ 31.  The Loan Agreement
and Disclosure Schedule required CropUSA to disclose
any "material contracts" that "could have a Material
Adverse Effect on CropUSA's "[b]usiness, assets,
liabilities, financial condition, results of
operations[,] or business prospects" and also required
CropUSA to disclose all "payments of cash or other
property" CropUSA would be making to any

1    "[a]ffiliates."   Id.

2        Plaintiff alleges that on November 22, 2011,

3    Defendants prepared and submitted to Plaintiff the

4    Disclosure Schedule on CropUSA's behalf.   Id. ¶ 32.

5    Plaintiff alleges that Defendants "concealed material

6    information" that was required to be disclosed,

7    including the fact that in January 2009, Crop USA

8    entered into an agreement with its affiliate, AIA, that

9    obligated CropUSA to pay all of AIA's defense costs in

10   certain lawsuits against AIA.   Id.   Plaintiff alleges

11   that such information fell within the scope of the

12   Disclosure Schedule's required disclosures because the

13   agreement was for "payment" to an "affiliate," and the

14   agreement was a "material contract" because it "could

15   have [had] a Material Adverse Effect" on CropUSA's

16   "[b]usiness, assets, liabilities, financial condition,

17   results of operations or business prospects" because

18   the defense costs were "several million dollars" and

19   "provided Crop USA with no actual benefit."   Id. ¶¶ 31-

20   32.   Plaintiff alleges that Defendants were aware of

21   the AIA contract when Defendants submitted the

22   Disclosure Schedule and intentionally concealed the AIA

23   contract from Plaintiff.   Id. ¶ 32, 70-72.

24           b. *Opinion Letter Allegations*

25       Plaintiff alleges that the Loan Agreement required,

26   as an express condition precedent to GemCap's approval

27   of the loan, a Legal Opinion from CropUSA's counsel.

28   SAC ¶ 20.   On November 23, 2011, Defendants prepared

and delivered the Opinion Letter to GemCap in Santa
Monica, California.  SAC ¶ 21, Ex. 3.  Plaintiff
alleges that Defendant Gatziolis wrote the Opinion
Letter and that the Opinion Letter made material
assumptions, representations, and opinions that were
false.  SAC ¶¶ 24-25, 46-75.

Plaintiff alleges that the following express
representation,[1] among others, made by Defendants in the
Opinion Letter was false:

> [W]e wish to advise that, to our knowledge,
> there are no actions, suits, proceedings or
> investigations pending or threatened against the
> Borrower, or in which the Borrower is a party,
> before any court or governmental authority that
> . . . (c) by its pleadings or allegations seeks
> any determination or ruling that might . . .
> (ii) result in the termination, revocation,
> suspension or other material impairment of any
> license or permit required by any applicable
> federal law, statute, or regulation or

---

[1] Plaintiff also notes the following "assumption," among others, stated in the Opinion Letter:
c) "As to questions of fact material to the opinions expressed herein, all statements, representations and warranties made in the Loan Documents, in any certificate provided to us by the Borrower and in any other materials delivered to us with this opinion . . . are true and correct";
d) "All parties have complied with any requirement of good faith, fair dealing and conscionability."
SAC ¶ 25, Ex. 3 at 2 ¶¶ E, G.

1    governmental authority for the operation of the

2    Borrower in the business in which the Borrower

3    is currently engaged and as contemplated in the

4    Loan Documents.

5  SAC ¶ 25, Ex. 3 at 4.  Plaintiff alleges that when

6  Defendants represented that there was no pending

7  actions against CropUSA that "might" threaten CropUSA's

8  business license, Defendants were aware of "multiple

9  pending and/or threatened lawsuits" ("The Litigation")

10 against CropUSA that likely could have threatened

11 CropUSA's business license status because the

12 allegations against CropUSA included fraud, commingling

13 assets, and breach of fiduciary duties.  SAC ¶¶ 27-29.

14     Plaintiff alleges that it relied upon Defendants'

15 representations in both the Borrower's Disclosure and

16 the Opinion Letter and proceeded with the Loan, to

17 Plaintiff's injury, because Plaintiff thought

18 Defendants' statements were true.[2]  SAC ¶ 26.  Plaintiff

19 alleges it would not have proceeded with the CropUSA

20 loan if Plaintiff had known about the AIA contract or

21 The Litigation.  SAC ¶¶ 48-51, 70-73.

22

23     [2] Defendants also state in the Opinion Letter, as a
   qualification or limitation, that:

24     Wherever we indicate that our opinion with respect to the
       existence or absence of facts is based on our knowledge,

25     our opinion is based solely on . . . (ii) the
       representations and warranties of said parties contained

26     in the Loan Documents; we have made no independent
       investigation as to such factual matters.  However, we

27     know of no facts which lead us to believe such factual

28     matters are untrue or inaccurate.
   SAC, Ex. 3, at 4 ¶ A.

**B.   Procedural Background**

Plaintiff filed its initial Complaint on October 14, 2014 [1].  On January 16, 2015, Plaintiff filed its First Amended Complaint [18].  On March 17, 2015, Plaintiff was granted leave to file a Second Amended Complaint [23].  On March 18, 2015, Plaintiff filed its Second Amended Complaint [24].  On April 17, 2015 Defendant filed the present Motion to Dismiss [25]. The Opposition [30] and Reply [32] were timely filed. The Motion was set for hearing on May 26, 2015, and was taken under submission [33] on May 21, 2015.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the

non-moving party.  <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).  The question presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual grounds to support a plausible claim to relief such that plaintiff is entitled to offer evidence in support of its claim. <u>Iqbal</u>, 556 U.S. at 678; <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002).

### III. ANALYSIS

**A.  <u>Defendants' Motion to Dismiss SAC Pursuant to Fed. R. Civ. P. 12(b)(6)</u>**

    1.  <u>Plaintiff's Request for Judicial Notice</u>

Plaintiff requests that the Court take judicial notice of five documents, all of which are filings or opinions in two Idaho cases that relate to allegations in Plaintiff's SAC.  <u>See</u> Pl.'s Request for Judicial Notice 2:1-3:3, Exs. 1-7.

Rule 201 of the Federal Rules of Evidence[3] states that the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Because the existence and content of the five

---

[3] In diversity cases, judicial notice is governed by the Federal Rules of Evidence. <u>Alimena v. Vericrest Fin., Inc.</u>, No. S-12-0901, 2012 WL 66512001, at *4 n.8 (E.D. Cal. Dec. 20, 2012); <u>Wray v. Gregory</u>, 61 F.3d 1414, 1417 (9th Cir. 1995).

public documents are facts that "can be readily
determined from sources whose accuracy cannot
reasonably be questioned," the Court **GRANTS** Plaintiff's
Request for Judicial Notice [31].

    2.  <u>Professional Malpractice Claim</u>

    The elements of a cause of action for professional
malpractice are: "'(1) the duty of the professional to
use such skill, prudence, and diligence as other
members of his profession commonly possess and
exercise; (2) a breach of that duty; (3) a proximate
causal connection between the negligent conduct and the
resulting injury; and (4) actual loss or damage
resulting from the professional's negligence.'"
<u>Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP</u>, 593
F. Supp. 2d 1153, 1165 (S.D. Cal. 2008) (quoting
<u>Osornio v. Weingarten</u>, 124 Cal. App. 4th 304, 319**,** 53
Cal. Rptr. 3d 700 (2007)).

       a.  *Duty*

    "While other elements of a legal malpractice claim
are generally factual . . ., the existence of the
attorney's duty of care owing to the plaintiff is
generally a question of law . . . ." <u>Osornio v.
Weingarten</u>, 21 Cal. Rptr. 3d 246, 251 (Ct. App. 2004).
An attorney who issues "a legal opinion intended to
secure benefit for the client . . . must be issued with
due care, or the attorneys who do not act carefully
will have breached a duty owed to those they attempted
or expected to influence on behalf of their clients."

9

_Roberts v. Ball, Hunt, Hart, Brown & Baerwitz_, 128 Cal. Rptr. 901, 906 (Ct. App. 1976); _see_ _Osornio_, 21 Cal. Rptr. at 259-60.

Here, Plaintiff's SAC alleges that Defendants, representing CropUSA, issued to Plaintiff a Legal Opinion Letter that was intended to benefit CropUSA. SAC ¶¶ 19-21, 34, 36-37, 46.  As such, pursuant to _Roberts_, Defendants owed Plaintiff a duty of care. _Roberts_, 128 Cal. Rptr. at 906.

Additionally, a defendant, professional or otherwise, always has a duty not to defraud others. _Jackson v. Rogers & Wells_, 258 Cal. Rptr. 454, 459 (Ct. App. 1989) (stating that if an attorney "commits fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability").  Though an attorney may not owe a duty to a non-client to disclose information protected by the attorney-client relationship, "the rule has long been settled in [California] that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, . . . he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated[;] [i]f he speaks at all, he must make a full and fair disclosure." _Rogers v. Warden_, 125 P.2d 7, 9 (Cal. 1942).  As such, a duty of disclosure exists if "the defendant makes representations but does not disclose facts which

materially qualify the facts disclosed, or which render
his disclosure likely to mislead." Linear Tech. Corp.
v. Applied Materials, Inc., 61 Cal. Rptr. 3d 221, 234
(Ct. App. 2007); see also Goodman, 556 P.2d at 745;
Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 491
P.2d 421, 429 (Cal. 1971) (in bank). In sum, if
Plaintiff's SAC alleges fraud, including a failure to
disclose facts that "materially qualify" facts already
disclosed, Plaintiff's SAC sufficiently alleges duty.

The Court finds that Plaintiff's SAC alleges
fraud,[4] including an intentional failure to disclose
facts that "materially qualify" facts disclosed.

First, Plaintiff's SAC specifically[5] alleges that
Defendants made affirmative statements in the Opinion
Letter that Defendants knew at the time were false.
See SAC ¶¶ 25, 46-61, Ex. 3 at 4. Plaintiff's SAC also
alleges that Defendants concealed facts that materially
qualified statements in the Opinion Letter and
Borrower's Disclosure. See SAC ¶¶ 16-30, 40-41, 69-75.

Second, the SAC alleges that Defendants intended to
induce Plaintiff's reliance; that Plaintiff reasonably

---

[4] The elements of fraud are: (1) a misrepresentation; (2)
knowledge of falsity; (3) intent to induce reliance; (4) actual
and justifiable reliance; and (5) resulting damage." Cicso Sys.,
Inc. v. STMicroelectronics, Inc., No. C-14-03236-RMW, 2014 WL
7387962, at *4 (N.D. Cal. Dec. 29, 2014) (citing Lazar v. Sup.
Ct., 909 P.2d 981 (Cal. 1996)).

[5] Upon review of Plaintiff's SAC, the specificity of
Plaintiff's SAC satisfies the heightened pleading standard for
fraud under Fed. R. Civ. P. 9(b). See Vess v. Ciba-Geigy Corp.
USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

relied on the misrepresentations to Plaintiff's injury;
and that if Plaintiff had known the truth, Plaintiff
would not have agreed to the CropUSA loan.  See id. ¶¶
25(f)-27, 40(c), 49-52.  Because Plaintiff's SAC
alleges actual fraud, the SAC sufficiently pleads duty.
See Rogers, 125 P.2d at 9.

> b.  *Breach*

As discussed above, Plaintiff's SAC alleges that
Defendants breached their duty of care to Plaintiff by
making fraudulent statements or concealments.  See SAC
¶¶ 25(f)-27, 40(c), 47.

> c.  *Injury & Causation*

As discussed above, Plaintiff's SAC alleges "a
proximate causal connection between the negligent
conduct and the resulting injury" because the SAC
alleges that Plaintiff's reliance on Defendants'
misrepresentations in the Opinion Letter and Borrower's
Disclosure resulted in an injury to Plaintiff of
$12,000,000.  SAC ¶¶ 35-39, 51-52.  Plaintiff alleges
that, "[h]ad GemCap known of the true facts regarding
Crop USA, . . . [Plaintiff] would not have entered into
the Loan with Crop USA."  SAC ¶¶ 50-51.

Defendants argue that Plaintiff's alleged injury is
not valid because Plaintiff has, in a separate action
against CropUSA, already obtained a judgment against
CropUSA for $12,126,534.61, which is greater than the
$12,000,000 injury Plaintiff alleges in this action.
Mot. 18:6-17.  Though Defendants do not cite any case

law, they seem to be arguing that Plaintiff cannot obtain a double recovery for the same injury. See, e.g., Lovejoy v. Murray, 70 U.S. 1, 17 (1865) ("When the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages.").

Though Plaintiff does not respond directly to Defendants' argument,[6] Defendant does not meet its burden of establishing Plaintiff's lack of injury because Defendant does not show that Plaintiff has *received* any money from CropUSA to remedy Plaintiff's alleged $12,000,000 injury. Ash v. Mortensen, 150 P.2d 876, 878 (Cal. 1944) (stating that "[u]ntil plaintiff has *received* full compensation for both injuries," the different defendant cannot claim "full compensation") (internal quotation marks omitted) (emphasis added).[7]

_____

[6] Plaintiff does respond to the extent Plaintiff insists it has sufficiently alleged injury, but does not mention Defendants' argument relating to Plaintiff's judgment against CropUSA. See Opp'n 20:11-12.

[7] See also Ash, 150 P.2d at 879 (stating that a plaintiff "ha[s] the right to show what damage, if any, was actually suffered by reason of malpractice and to have the jury's award in this action restricted to the difference between such damage and any sum already received by plaintiff as compensation therefor"); Dawson v. Schloss, 29 P. 31, 31-32 (Cal. 1892) (noting that the "prevailing rule in the United States" is that "the party injured may bring separate suits against the wrong-doers, and proceed to judgment in each, and that no bar arises to any of them until satisfaction is received")(internal quotation marks omitted)); Carr v. Cove, 109 Cal. Rptr. 449, 453 (Ct. App. 1973) (""When the plaintiff has accepted satisfaction in full for the injury done

13

Because Defendant has not met its burden of showing a lack of injury, and because Plaintiff has pled an otherwise valid and plausible injury of $12,000,000, Plaintiff's SAC sufficiently pleads injury.

Because Plaintiff's SAC pleads all of the elements of a professional malpractice claim, Defendant's Motion to Dismiss Plaintiff's first claim for professional malpractice is **DENIED**.

### 3. Intentional Misrepresentation Claim

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." Cisco Sys., Inc. v. STMicroelectronics, Inc., No. C-14-03236-RMW, 2014 WL 7387962, at *4 (N.D. Cal. Dec. 29, 2014) (citing Lazar v. Sup. Ct., 909 P.2d 981 (Cal. 1996)). Because Plaintiff's SAC sufficiently alleges intentional misrepresentation, as discussed above, Defendants' Motion to Dismiss Plaintiff's claim for intentional misrepresentation is **DENIED**.

### 4. Negligent Misrepresentation Claim

The elements of negligent misrepresentation are: (1) the defendant must have made a representation as to

---

him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages.") (internal quotation marks and alterations omitted)); Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 WL 4467837, at *25 (N.D. Cal. Sept. 9, 2014) ("[I]t is only when [the prevailing plaintiff] *receives* [her] award[] . . . that an impermissible double recovery occurs.").

a past or existing material fact;

(2) the representation must have been untrue;

(3) regardless of his actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

(4) the representation must have been made with the intent to induce plaintiff to rely upon it;

(5) the plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation; and

(6) as a result of plaintiff's reliance upon the truth of the representation, the plaintiff must have sustained damage.

Christiansen v. Roddy, 213 Cal. Rptr. 72, 75 (Ct. App. 1986); see Cal. Bagel Co. v. Am. Bagel Co., No. CV 97-8863 MMM (MANx), 2000 WL 35798199, at *7 (C.D. Cal. 2000). "The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."[8] Cisco Sys., Inc. v. STMicroelectronics, Inc., No. C-14-03236-RMW, 2014 WL 7387962, at *4 (N.D. Cal. Dec. 29, 2014).

---

[8] "In California, 'omissions' or nondisclosures cannot give rise to liability for negligent misrepresentation." Cisco Sys., 2014 WL 7387962, at *5.

As discussed above, Plaintiff's SAC sufficiently alleges that Defendants made false representations of fact with the intent to induce Plaintiff's reliance and that Plaintiff justifiably relied on those misrepresentations to Plaintiff's injury.  Because Plaintiff's SAC alleges that Defendants made affirmative misrepresentations of fact with knowledge of their falsity, Plaintiff sufficiently alleges that Defendants "made the representation without any reasonable ground for believing it to be true." Christiansen, 213 Cal. Rptr. at 75; see SAC ¶¶ 40, 55-56.  Plaintiff's SAC also sufficiently pleads that Plaintiff was "unaware of the falsity of the representation."  See SAC ¶ 65.

Because Plaintiff sufficiently alleges the elements of negligent misrepresentation, Defendants' Motion to Dismiss this claim is **DENIED**.

5.  Concealment Claim

"To state a claim for active concealment, a plaintiff must plead the following five elements: '(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a

result of the concealment or suppression of the fact, the plaintiff must have sustained damage.'"   Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (quoting Lovejoy v. AT&T Corp., 14 Cal. Rtpr. 3d 117 (Ct. App. 2004)).

### a.   Concealment of Material Fact

Plaintiff sufficiently pleads concealment of a material fact by alleging that Defendants (1) concealed the fact that there were multiple pending/threatened lawsuits against CropUSA that could have threatened CropUSA's business license when Defendants represented that there were no such pending actions against CropUSA and (2) concealed the AIA agreement in the Disclosure Schedule, which Plaintiff alleges was an agreement within the scope of the Disclosure Schedule's required disclosures.   SAC ¶¶ 25(f)-27, 40(c), 50-52.

### b.   Duty to Disclose

As discussed above, Plaintiff sufficiently alleges Defendants' duty to disclose the fact that there was pending/threatened litigation against CropUSA that might threaten CropUSA's business license because Defendants affirmatively represented that no such litigation existed.   See Rogers, 125 P.2d at 9 (stating that "although one may be under no duty to speak as to a matter, 'if he undertakes to do so, . . . he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated[;] [i]f he speaks

17

at all, he must make a full and fair disclosure"); <u>see also</u> <u>Linear Tech. Corp.</u>, 61 Cal. Rptr. at 234. Regarding the Disclosure Schedule, Defendants' choice to prepare the Disclosure Scheduled triggered Defendants duty to "make a full and fair disclosure" in the Disclosure Schedule.  <u>Rogers</u>, 125 P.2d at 9.

       c.  *Intent to Defraud*

Plaintiff's SAC expressly alleges that Defendants "intended to deceive GemCap by concealing" material facts regarding pending/threatened litigation against CropUSA or the AIA agreement.  SAC ¶ 70-71; <u>see</u> <u>Pedrotti v. Am. Nat'l Fire Ins. Co. of Columbus, Ohio</u>, 266 P. 376, 90 Cal. App. 668, 671 (1928) (stating that whether a false statement is made with intent to deceive is "a question of fact").

       d.  *Plaintiff Unaware of Fact and Would Not Have Acted If Fact Was Known*

Plaintiff's SAC alleges that Plaintiff "was unaware of the material facts that Defendants suppressed" and that Plaintiff "would not have entered into the Loan with Crop USA" had Plaintiff been aware of the concealed facts.  SAC ¶¶ 71-73.

       e.  *Injury Resulting from Concealment*

Plaintiff's SAC alleges that as a proximate result of Defendants' concealment, Plaintiff agreed to the CropUSA loan and thereby suffered $12,000,000 in injury when CropUSA defaulted on the Loan.  SAC ¶ 74.

Because Plaintiff sufficiently alleges each element

of a concealment claim, Defendants' Motion to Dismiss Plaintiff's concealment claim is **DENIED.**

**B.**   **Defendants' Motion to Dismiss Defendant Gatziolis**
      **for Lack of Personal Jurisdiction Pursuant to Fed.**
      **R. Civ. P. 12(b)(2)**

   1.   Legal Standard

   A party may move for dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Fed. R. Civ. P. 12(b)(2).

            a.   *Plaintiff's Burden of Proof at Motion to*
                 *Dismiss Stage*

   "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." Doe v. Unocal Corp., 248 F.3d 915, 921-22 (9th Cir. 2001). But when a court determines a defendant's Rule 12(b)(2) motion to dismiss on the papers without holding an evidentiary hearing,"the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. at 922 (internal quotation marks and alterations omitted).  To make a prima facie showing, the plaintiff need only allege facts that, if true, would support a finding of jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).

   "Where not directly controverted," the plaintiff's version of the facts is "taken as true," and "conflicts between the facts in the parties' affidavits must be resolved in [the plaintiff's] favor." Unocal Corp.,

248 F.3d at 921-22 (internal quotation marks omitted). But "mere allegations . . ., when contradicted by affidavits, are not enough to confer personal jurisdiction of a nonresident defendant," and, "in such a case, facts, not mere allegations, must be the touchstone"[9] of the court's decision.  <u>VBConversions LLC v. New Solutions, Inc</u>, No. CV 13-00853 RSWL (ANx), 2013 WL 2370723, at *3 (C.D. Cal. May 20, 2013).

b.  *Personal Jurisdiction over Non-Resident*

Where there is no applicable federal statute governing jurisdiction, the exercise of personal jurisdiction over a nonresident defendant requires two findings: 1) the forum state's laws provide a basis for exercising personal jurisdiction, and 2) the assertion of personal jurisdiction comports with due process. <u>Adv. Skin & Hair, Inc. v. Bancroft</u>, 858 F. Supp. 2d 1084, 1087 (C.D. Cal. 2012).  "California's long-arm statute extends jurisdiction to the limits of due process." <u>Unocal Corp.</u>, 248 F.2d at 923 (citing Cal. Code Civ. P. § 410.10).  "Due process requires that a defendant have 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  <u>Id.</u> (internal alterations omitted).  The defendant's contacts "must be 'such that the defendant

---

[9] "Parties may go beyond the pleadings and support their positions with discovery materials, affidavits, or declarations." <u>VBConversions</u>, 2013 WL 2370723, at *3; <u>see</u> <u>Data Disc, Inc. v. Sys. Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977).

1  should reasonably anticipate being haled into court'"

2  in the forum.  Id. at 1088 (internal alterations

3  omitted).  Personal jurisdiction over a nonresident

4  defendant can be "general" or "specific."  Id.

5      Defendants challenge the Court's personal

6  jurisdiction over Defendant James Gatziolis, an

7  individual residing in Illinois and a partner at Q&B,

8  which is a limited legal partnership in Wisconsin.

9  Mot. 21:6-18; see SAC ¶¶ 2-3.  Plaintiff does not

10  allege general personal jurisdiction over Defendant

11  Gatziolis, but asserts that the Court has specific

12  personal jurisdiction over him.  See Opp'n 21:18-28.

13          c.  *Specific Personal Jurisdiction*

14      "Specific jurisdiction exists where the cause of

15  action arises out of the defendant's [purposeful]

16  contacts with the forum state, even if those contacts

17  are isolated and sporadic."  Google Inc. v. Rockstar

18  Consortium U.S. LP, No. C 13-5933 CW, 2014 WL 1571807,

19  at *6 (N.D. Cal. Apr. 17, 2014); see Goodyear, 131 S.

20  Ct. at 2853; Lake v. Lake, 817 F.2d 1416, 1421 (9th

21  Cir. 1987).

22      The Ninth Circuit applies a three-prong test to

23  determine whether the exercise of specific jurisdiction

24  comports with due process: "1) the defendant must

25  purposefully avail herself of . . . the forum by some

26  affirmative act or conduct; 2) the plaintiff's claim

27  must arise out of, or result from, the defendant's

28  forum-related contacts; and 3) the extension of

jurisdiction must be 'reasonable.'"   Adv. Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1089 (C.D. Cal. 2012) (citing Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991)). The plaintiff bears the burden of satisfying the first two prongs, and if the plaintiff succeeds, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."   Id. (internal quotation marks omitted).

    2.   Analysis

        a. *Purposeful Availment/Direction*

Under the first prong of specific jurisdiction, the Ninth Circuit considers the "two distinct concepts" of "purposeful availment" and "purposeful direction," where purposeful availment is "most often used in suits sounding in contract," and purposeful direction is "most often used in suits sounding in tort."   Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).  Because Plaintiff alleges two intentional torts, the Court will apply the "purposeful direction" standard.   See id.

The Ninth Circuit evaluates "purposeful direction" for an intentional tort using the three-part "Calder-effects" test.   Holland Am., 485 F.3d at 459. Under the "effects test," "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in

the forum state.'" <u>Brayton</u>, 606 F.3d at 1128.  The

defendant need not have any physical contact with the

forum.  <u>Id.</u>

### i. *Intentional Act*

Because Plaintiff sufficiently alleges that

Defendant Gatziolis is liable for intentional torts by

Gatziolis's intentional act of drafting the Opinion

Letter, Plaintiff sufficiently alleges an "intentional

act" by Gatziolis.  <u>See</u> <u>Wa. Shoe Co. v. A-Z Sporting</u>

<u>Goods Inc.</u>, 704 F.3d 668, 673-74 (9th Cir. 2012);

<u>Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements</u>

<u>Ltd.</u>, 328 F.3d 1122, 1131 (9th Cir. 2003).

### ii. *Expressly Aimed at Forum*

Regarding whether the intentional act is "expressly

aimed" at the forum, the Ninth Circuit has found this

prong satisfied when the defendant knew the plaintiff

was in the forum when the defendant committed the

intentional tort against the plaintiff.  <u>See</u> <u>Harris</u>

<u>Rutsky</u>, 328 F.3d at 1131.  Here, Plaintiff has alleged

that Gatziolis knew Plaintiff had its principal place

of business in California when Gatziolis committed the

alleged intentional tort because Gatziolis researched

California law for the Opinion Letter and sent the

Opinion Letter to Plaintiff in California.  <u>See</u> SAC ¶¶

23-24; Opp'n 22:6-22.  Plaintiff also alleges that

Gatziolis "communicated with GemCap . . . in writing,

by telephone, and in person in California concerning

the Legal Opinion Letter and the Loan."  SAC ¶ 24.

23

Plaintiff has made a prima facie showing that Gatziolis expressly aimed his intentional tortious act at California.   See Harris Rutsky, 328 F.3d at 1131.

### iii. *Knowledge Harm Will Likely Occur in Forum*

Because Plaintiff's "principal place of business is in California, and the burnt of the harm was . . . felt in California," and because Plaintiff has sufficiently alleged that Gatziolis knew that Plaintiff was a California resident, Plaintiff has made a prima facie showing of this final prong of purposeful direction. Harris Rutsky, 328 F.3d at 1131; see SAC ¶¶ 23-24.

Plaintiff sufficiently alleges purposeful direction by Defendant Gatziolis.

### b.   *Claims Arise Out of Contacts*

"A lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum." Adv. Skin & Hair, 858 F. Supp. 2d at 1090.   The Ninth Circuit applies a "but for" test to determine whether an action arises out of the defendant's contacts with the forum.   Id.

Here, Plaintiff has alleged facts showing that "but for" Gatziolis alleged intentional fraud in the Opinion Letter and Borrower's Disclosure, Plaintiff would not have agreed to loan CropUSA money and thus would not have been injured.   SAC ¶¶ 32-34, 49.   As such, Plaintiff makes a prima facie showing that its claims

arise out of Gatziolis's intentional tortious contacts with California.  See Harris, 328 F.3d at 1131-32.

           c.   *Reasonableness*

    "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable," meaning that it comports with "fair play and substantial justice."  Adv. Skin & Hair, 858 F. Supp. 2d at 1091 (internal quotation marks omitted); see Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1400 (9th Cir. 1986).  The Ninth Circuit assesses reasonableness by considering the following factors:
(1) the extent of the defendant's purposeful interjection into the forum;
(2) the burden on the defendant in litigating in the forum;
(3) the extent of conflict with the sovereignty of the defendant's state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.
Adv. Skin & Hair, 858 F. Supp. 2d at 1091.

### i. *Purposeful Interjection*

The first factor, "the extent of the defendant's purposeful interjection into the forum," "'parallels the question of minimum contacts,'" <u>id.</u>, but still must be considered apart from the purposeful direction test, for "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488 (9th Cir. 1993) (internal quotation marks and alterations omitted).  Again, Defendant bear the burden of making a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  <u>Haisten</u>, 784 F.2d at 1400 (internal quotation marks omitted).

Plaintiff has provided evidence via declarations and exhibits showing that Gatziolis traveled to California several times and engaged in phone calls, mail, and email directed to California over several years.  Specifically, the Gilbert Declaration states that Mr. Gilbert visited California "various times in connection with client transactions" and that Mr. Gilbert has "had numerous contacts with Mr. Gatziolis from [Mr. Gilbert's] office in California in connection with other . . . transactions, including numerous telephone conversations and email communications."  Gilbert Decl. Supp'g Pl.'s Opp'n ¶¶ 3-4.  Mr. Ellis declares that Gatziolis met with him personally in

26

California in 2013 with regard to CropUSA's default on the loan.  Ellis Decl. Supp'g Pl.'s Opp'n ¶ 4. Plaintiff also argues that because Gatziolis specifically researched California law for the Opinion Letter, which Gatziolis sent to a California company, Gatziolis purposefully interjected himself by those actions into California.  Opp'n 24:1-25:14.

Though Gatziolis's contacts with California are not extensive, Plaintiff's declarations show that Gatziolis has had multiple contacts with California over several years.  This factor weighs in favor of reasonableness.

### ii. *Burden on Defendant*

The second factor, which considers the burden that litigating in the forum imposes on the defendant, "must be examined in light of the corresponding burden on the plaintiff."  <u>Adv. Skin & Hair</u>, 858 F. Supp. 2d at 1091. Defendants, who bear the burden, assert that Gatziolis would suffer a "substantial burden" if he had to litigate in California, but do not explain how or why such a burden would exist.  Mot. 25:12-13.  Plaintiff, on the other hand, provides evidence that Gatziolis has made several trips to California for business.  <u>See</u> Gilbert Decl.; Ellis Decl.  Plaintiff also points out that Gatziolis's law firm, Defendant Q&B, does not contest the Court's personal jurisdiction and thus will already be litigating this action here in California, which makes it convenient for Gatziolis to litigate in California and inconvenient for Plaintiff to have to

1  litigate this Action in two separate forums.  Opp'n
2  23:19-28.  Additionally, modern air travel, as well as
3  electronic forms of communication, make litigating in
4  another state less burdensome.  This factor weighs in
5  favor of reasonableness.

6                iii. *Conflict with Sovereignty*

7       The third factor evaluates "the extent of any
8  conflict with the sovereignty" of the defendant's home
9  country or state.  Adv. Skin & Hair, 858 F. Supp. 2d at
10 1091.  Because Defendants have not provided any
11 evidence of a conflict with any sovereignty, this
12 factor weighs in favor of reasonableness.  See id.
13 (because defendant was a resident of another state,
14 "'[a]ny conflicting sovereignty interests [can be]
15 accommodated through choice-of-law rules'").

16               iv. *California's Interest*

17      The fourth factor "considers California's interest
18 in adjudicating the controversy."  Adv. Skin & Hair,
19 858 F. Supp. 2d at 1091.  California has a strong
20 interest adjudicating this controversy because
21 Plaintiff is a resident of California and the alleged
22 injury occurred in California.  See id.  This factor
23 weighs in favor of reasonableness.

24            v.  *Efficient Judicial Resolution*

25      The fifth factor, the most efficient judicial
26 resolution of the controversy, "primarily focuses on
27 the location of the evidence and the witnesses."  Adv.
28 Skin & Hair, 858 F. Supp. 2d at 1092.  Defendants argue

that "because Gatziolis' relevant alleged activities"
did not occur in California, "the evidence regarding
Gatziolis is expected to be located outside
California." Mot.25:8-17. Plaintiff asserts that
"most of the relevant documents are located in
California, where the loan was made and administered,"
and most of Plaintiff's witnesses are located in
California. Opp'n 25:3-14; see Gilbert Decl.; Ellis
Decl. Because evidence and witnesses are likely
located both in and outside of California, this factor
is neutral.

### vi. *Plaintiff's Interest in Relief*

The sixth factor is the importance of the forum to
the plaintiff's interest in convenient and effective
relief. Litigating this action outside of California
would obviously inconvenience Plaintiff, but "neither
the Supreme Court nor [the Ninth Circuit] has given
much weight to inconvenience to the Plaintiff." Adv.
Skin & Hair, 858 F. Supp. 2d at 1092; Ziegler v. Indian
River Cnty., 64 F.3d 470, 476 (9th Cir. 1995). Because
Plaintiff would likely be able to obtain convenient and
effective relief in a district court of another state,
this factor weighs slightly in favor of Defendants.

### vii. *Alternative Forum*

The final factor, the availability of an
alternative forum, weighs in favor of Defendants
because Plaintiff does not show that it cannot bring
its claims in an alternative forum, including in

1    Illinois or Wisconsin.  See Core-Vent, 11 F.3d at 1490

2    ("The plaintiff bears the burden of proving the

3    unavailability of an alternative forum.").

4         On the whole, the factors favor reasonableness, and

5    Defendants fail to make a "compelling case" that the

6    exercise of personal jurisdiction over Gatziolis would

7    be unreasonable.

8         In light of the above, Plaintiff has made a prima

9    facie showing of specific personal jurisdiction over

10   Defendant Gatziolis.  Defendants' Motion to Dismiss

11   Gatziolis for lack of personal jurisdiction is **DENIED**.

**VI.   CONCLUSION**

13        For the foregoing reasons, Defendants' Motion to

14   Dismiss [25] is **HEREBY DENIED**.

15        **IT IS SO ORDERED.**

16   DATED: August 14, 2014       s/ RONALD S.W. LEW

17                                **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge