1

2                                                               O

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11

12  GemCap Lending, LLC,          )    CV 14-07937-RSWL-Ex
                                  )
13                                )
              Plaintiff,          )    **ORDER re:**
14                                )
                                  )    **1. Defendants Quarles &**
15      v.                        )    **Brady LLP and James**
                                  )    **Gatziolis' Motion for**
16                                )    **Summary Judgment or**
    Quarles & Brady, LLP, James   )    **Partial Summary Judgment**
17  Gatziolis, and Does 1         )    **[116];**
    through 10, inclusive,        )
18                                )    **2. Plaintiff GemCap**
                                  )    **Lending I, LLC's Motion**
19            Defendants.         )    **for Partial Summary**
                                  )    **Judgment[120];**
20                                )
                                  )    **3. Plaintiff's Motion to**
21                                )    **Strike Robert L. Kehr's**
                                  )    **Expert Report [113];**
22                                )
                                  )    **4. Defendants' Motion to**
23                                )    **Strike Stanley W.**
                                  )    **Lamport's Expert Report**
24                                )    **[114];**
                                  )
25                                )    **5. Defendants' Motion to**
                                  )    **Strike Portions of**
26                                )    **Douglas E. Johnston,**
                                  )    **Jr.'s Expert Report**
27                                )    **[115]**
28  ///

                                  1

Currently before Court are the following Motions: (1) Defendants Quarles & Brady LLP and James Gatziolis' Motion for Summary Judgment or Partial Summary Judgment [116]; and (2) Plaintiff GemCap Lending I, LLC's Motion for Partial Summary Judgment [120].[1] Defendants' Motion arises out of Plaintiff's action against Defendants for professional malpractice, intentional misrepresentation, negligent misrepresentation, and concealment under California law. Plaintiff's Motion relates to the latter three causes of action only. Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendants' Motion. The Court **DENIES** Plaintiff's Motion.

### I. BACKGROUND

**A.    Factual Background**[2]

_____

[1] Also before the Court are: (1) Plaintiff's Motion to Strike Robert L. Kehr's Expert Report [113]; (2) Defendants' Motion to Strike Stanley W. Lamport's Expert Report [114]; and (3) Defendants' Motion to Strike Portions of Douglas E. Johnston, Jr.'s Expert Report [115]. The Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **DENIES** all three of these Motions to Strike. See infra Part II.B.3.

[2] The Court makes the following factual findings, and additionally, adopts Defendants' proposed factual findings [117] as true. See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986) ("There is no requirement that the trial judge make findings of fact [when granting summary judgment because] the threshold inquiry [is whether] there are any genuine factual issues."); Taybron v. City & Cty. of San Francisco, 341 F.3d 957, 959 n.2 (9th Cir. 2003); C.D. Cal. R. 56-3 ("[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist."). To the extent Defendants describe or comment on exhibits, the Court only considers the exhibits themselves. See, e.g., Defs.' Statement of Undisputed

2

1.  <u>Parties and Relevant Non-Parties</u>

Plaintiff GemCap Lending I, LLC ("Plaintiff") is a Delaware LLC with its principal place of business in Malibu, California. Third Am. Compl. ("TAC") ¶ 1, ECF No. 76. Plaintiff is a commercial-asset based lender. Decl. of David Ellis in Supp. of Pl.'s Mot. ("D. Ellis Decl.") ¶ 13, ECF No. 120-12. In making loans, Plaintiff considers the value of a pledged asset that can be liquidated to pay off a debt in the event of default. <u>Id.</u> ¶ 3; Decl. of Richard Ellis in Supp. of Pl.'s Mot. ("R. Ellis Mot. Decl.") ¶ 3, ECF No. 120-10. If a borrower defaults, Plaintiff liquidates the collateral to pay its lenders. Pl.'s Statement of Undisputed Facts ("Pl.'s SUF") ¶ 6, ECF No. 136-1.

Defendant Quarles & Brady LLP ("Quarles & Brady") is a Wisconsin limited liability partnership. TAC ¶ 2. Defendant James Gatziolis ("Gatziolis") is an Illinois citizen and a partner at Quarles & Brady. <u>Id.</u> ¶ 3.

Non-party Crop USA Insurance Agency, Inc. and Crop USA Insurance Services, Inc. (collectively, "Crop USA") is an insurance agency, as well as an intermediary general agent, that enters into contracts with insurance companies to sell farm insurance policies. Pl.'s SUF ¶¶ 10-11; Pl.'s Suppl. Statement of Undisputed Facts ("Pl.'s SSUF") ¶¶ 1-2, ECF No. 143-2.

---

Facts ("Defs.' SUF") ¶ 27, ECF No. 117. Plaintiff's other disputes as to Defendants' proposed facts are not on point. <u>See, e.g.</u>, Pl.'s Response to Defs.' SUF ¶ 6, ECF No. 143-2.

Crop USA retained Quarles & Brady to help it secure loans from Plaintiff. Decl. of R. John Taylor in Supp. of Pl.'s Mot. ("Taylor Mot. Decl.") ¶ 9, ECF No. 120-6.

Crop USA does not transact directly with farmers, the insurance policy holders, but rather enters into contracts with other insurance agencies, "sub-agents," to sell crop insurance policies. Pl.'s SUF ¶ 13. Crop USA then pays a portion of the commissions received to its sub-agents for selling insurance policies directly to the farmers ("Sub-Agent Commissions"). Id. ¶ 14. In 2011, Crop USA had a contract with Diversified Crop Insurance Company ("Diversified"). Id. ¶ 12. This contract involved the sale of insurance and corresponding commissions. Taylor Mot. Decl., Ex. B at 10-21.

### 2. 2011 Loan and Loan Agreement

On November 23, 2011, Plaintiff entered into a Loan and Security Agreement ("Loan Agreement") with Crop USA in connection with a $5,000,000 revolving loan (the "Loan"). TAC ¶ 13, Ex. 1. The Loan was structured as follows: Crop USA would deposit its collateral into a lockbox account (the "Lockbox"), which Plaintiff could take in event of a default. Pl.'s SUF ¶¶ 19-22.

As security for the Loan, Crop USA pledged all of its property and assets to Plaintiff (the "Collateral"). TAC ¶ 16. Paragraph 5.1 of the Loan Agreement makes pledging of this security an essential condition of the Loan. Taylor Mot. Decl., Ex. C ("Loan

Agmt.") at 36-37.  The Collateral includes "Accounts,"
id., encompassing "Contract Receivables," id. § 1.3, or
"all of the right, title and interest" of Crop USA to
"commissions otherwise payable under a Sales Agent
Agreement," id. § 1.34.

In Paragraph 5.4 of the Loan Agreement, Crop USA
represents that the Collateral for the Loan belongs to
Crop USA "free and clear of all Liens (including any
claim of infringement) except those in Lender's favor."
Id. at 38.  Paragraph 8.24 of the Loan Agreement
obligates Crop USA to provide Plaintiff with "true,
accurate and complete" representations and warranties
in connection with the Loan.  Id. at 50.

3.  First Legal Opinion Letter

In order for Plaintiff to approve the Loan, the
Loan Agreement required Crop USA to give Plaintiff a
written legal opinion that shall be "acceptable to"
Plaintiff, the lender.  Id. at 41.  On November 23,
2011, Defendants sent Plaintiff a legal opinion letter
("2011 Opinion Letter").  Decl. of Douglas A. Fretty in
Supp. of Defs.' Mot. ("Fretty Mot. Decl."), Ex. 3, ECF
No. 118-3.  Therein, Defendants made the following
statements: (1) they reviewed various Loan transaction
documents; (2) they assumed the Collateral was valid
and enforceable; (3) Plaintiff has rights in the
property and a security interest; (4) they were unaware
of any facts which would suggest that specific
representations in the Loan Agreement were untrue or

inaccurate; and (5) they were unaware of any pending suits or investigations against Crop USA before a court or governmental authority that might adversely affect the validity of any Loan document.  Id.

In the 2011 Opinion Letter, Defendants did not disclose that Crop USA was subject to multiple pending lawsuits.  At the time, Crop USA was subject to at least two lawsuits.  Defs.' SUF ¶ 18.  These lawsuits were filed by Reed Taylor, the brother of Crop USA's president R. John Taylor ("Taylor") and by Donna Taylor, Reed Taylor's ex-wife (the "Litigation").  TAC ¶ 29; see also Decl. of R. John Taylor in Supp. of Pl.'s Opp'n ("Taylor Opp'n Decl.") ¶ 34.  Defendants allegedly represented Crop USA in the Litigation. Taylor Opp'n Decl. ¶ 36.  The Litigation included claims against Crop USA for breach of contract, engaging in fraudulent activities, breaching fiduciary duties of loyalty, and commingling assets, among other things.  Fretty Mot. Decl., Ex. 22 at 109-20. Plaintiff alleges that the Litigation has jeopardized Crop USA's license status, financial viability, and thus, its ability to repay the Loan.  TAC ¶ 29.

Defendants allegedly were also representing AIA Insurance, Inc. and AIA Insurance Services Corporation (collectively, "AIA"), Taylor's other insurance company, in various lawsuits filed by Reed and Donna Taylor, regarding AIA's alleged fraudulent business practices.  TAC ¶ 30.  Plaintiff avers that these

lawsuits too might adversely affect Crop USA's ability to repay the Loan and are material to its Collateral. <u>Id.</u> ¶ 31.

Defendants also allegedly did not disclose facts regarding Crop USA's financial condition. <u>Id.</u> ¶ 32. In 2008, Crop USA could not fulfill its government requirements to sell crop insurance and thus sold its assets to Hudson Insurance Company, its largest creditor. <u>Id.</u> Plaintiff alleges that Defendants represented Crop USA in the asset sale and were thus aware of Crop USA's fragile financial status. <u>Id.</u> According to Plaintiff, as Crop USA's agents, Defendants entered into a written agreement with Hudson Insurance Group, to negotiate disputes between Crop USA and Clearwater Insurance Company. <u>Id.</u>

4. <u>Borrower's Disclosure Schedule</u>

Pursuant to section 1.11 of the Loan Agreement, Crop USA was required to disclose to Plaintiff material facts regarding its business operations, assets, and contractual obligations in a borrower's disclosure schedule ("Disclosure Schedule"). Loan Agmt. 24, 27, 31, 37, 47, 49. Specifically, Crop USA was obligated to share (1) contracts that would materially and adversely affect the Collateral or its liabilities and financial condition; and (2) all payments made to "affiliates," which were expressly prohibited without Plaintiff's approval. <u>Id.</u>; TAC ¶ 33a-b.

On January 1, 2009, Crop USA entered into an

administrative agreement with its "affiliate," AIA (the "Administrative Agreement"). Pl.'s SUF ¶¶ 32, 35. Reed Taylor was AIA's majority shareholder. Id. ¶ 41. Pursuant to the Administrative Agreement, Crop USA would "pay and account for attorney's fees" incurred in defending lawsuits against AIA. Id. ¶ 36. On November 22, 2011, Defendants sent Plaintiff the Disclosure Schedule, which did not disclose the Administrative Agreement. Taylor Mot. Decl., Ex. E at 79, 81.

     5. <u>Second Legal Opinion Letter</u>

     On February 3, 2013, Plaintiff agreed to amend the Loan and increased the Loan from $5,000,000 to $10,000,00 ("Amended Loan"). TAC ¶ 35, Ex. 4. Defendants prepared a second legal opinion letter ("2013 Opinion Letter") on February 4, 2013. ECF No. 118-11. Defendants made similar statements as in the 2011 Opinion Letter, including "we know of no facts which lead us to believe such factual matters are untrue or inaccurate." Id. at 6. Plaintiff alleges that Defendants failed to disclose the Litigation, the 2008 asset sale to Hudson Insurance Company, and Crop USA's general financial instability, just as it had in the 2011 Opinion Letter. TAC ¶¶ 39, 41-44.

     Before close of the original Loan Agreement in 2011, Crop USA allegedly gave Plaintiff its standard sub-agent agreement, which required all commission payments from the crop insurance company, CGB

Diversified Services, Inc., *dba* Diversified Crop
Insurance ("Diversified"), be paid directly to Crop
USA.  <u>Id.</u> ¶ 46b.  Plaintiff avers, in turn, Crop USA
would pay the sub-agents.  <u>Id.</u>  Plaintiff claims these
commissions were part of the Collateral.  <u>Id.</u>  Both the
Loan Agreement and amended Loan Agreement required the
commission payments to be deposited into a lockbox
account that Plaintiff monitored.  Loan Agmt. 61.

Defendants apparently knew, but did not disclose,
that Crop USA modified a standard sub-agent agreement
in connection with the Green Leaf reinsurance concept
("Green Leaf Agreement").  TAC ¶ 46b.  The Green Leaf
Agreement apparently sent commission payments directly
from Diversified to the sub-agents, rather than into
the Lockbox as intended.  <u>Id.</u>  Defendants also
apparently prepared, at Taylor's request, a private
placement memorandum for Green Leaf that disclosed the
Litigation and its adverse consequences.  Fretty Mot.
Decl., Ex. 23 at 93-94.  Defendants also allegedly
billed Crop USA $125,000 in attorneys' fees for the
Green Leaf project, violating the Loan Agreement's
requirement for Plaintiff's approval for affiliate
payments.  TAC ¶ 47.

**B.**  **<u>Procedural Background</u>**

Plaintiff filed its Third Amended Complaint (the
"TAC") on December 29, 2016 [76].  On July 31, 2017,
Plaintiff filed its Motion for Partial Summary Judgment
("Plaintiff's Motion") [120], and Defendants filed

their Motion for Summary Judgment or Partial Summary Judgment ("Defendants' Motion") [116].  On August 22, 2017, Plaintiff timely filed its Opposition to Defendants' Motion ("Plaintiff's Opposition") [141], and Defendants timely filed their Opposition to Plaintiff's Motion ("Defendants' Opposition") [139]. Plaintiff's Reply in Support of its Motion ("Plaintiff's Reply") [156] and Defendants' Reply in Support of their Motion ("Defendants' Reply") [150] were timely filed on August 29, 2017.

## II. DISCUSSION

**A.   Legal Standard**

    1.   <u>Summary Judgment</u>

    Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment has the initial burden of proof to show "no genuine dispute as to any material fact."  <u>Id.</u>; <u>see</u> <u>In re Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010).  "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: citing to particular materials in the record, including . . . stipulations."  Fed. R. Civ. P. 56(c)(1)(A).  "In determining any motion for summary judgment . . ., the Court may assume that the material facts as claimed and adequately supported by the moving

party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. R. 56-3.

Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. In re Oracle Corp., 627 F.3d at 387. If the moving party meets this burden, the burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see Fed. R. Civ. P. 56(a).

2. Partial Summary Judgment

Federal Rule of Civil Procedure 56(g) authorizes courts to grant partial summary judgment to limit the issues to be tried in a case. State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981)). Absent a specific statute authorizing otherwise, a partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order, neither of which is appealable prior to the entry of a final judgment in the case. Wynn v.

_Reconstruction Fin. Corp._, 212 F.2d 953, 956 (9th Cir. 1954).

**B.   Analysis**

   1.   Requests for Judicial Notice

      a.   _Defendants' First Request for Judicial Notice is **GRANTED**_

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must" take judicial notice "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Defendants ask the Court to take judicial notice of the following ("Defendants' First RJN"): (1) an order entered by the U.S. District Court of the Central District of California, Honorable S. James Otero, in the matter of GemCap Lending I, LLC v. Crop USA Insurance Agency, Inc., et al.; (2) the docket in the matter of Reed Taylor v. AIA Services Corp., et al., Case No. CV-2007-0000208 from Nez Perce County, Idaho; and (3) the docket in the matter of Donna Taylor, et al. v. Hawley Troxell Ennis & Hawley LLP, et al., Case No. 1:10-cv-00404 from the U.S. District Court of Idaho, Honorable Candy W. Dale. Defs.' Req. for Jud. Ntc. in Supp. of Defs.' Mot. ("Defs.' First RJN") 2:5-23, Exs. 1-3, ECF No. 119. Plaintiff does not oppose

Defendants' First RJN.

Per Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record.'" <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (citing <u>Mack v. South Bay Beer Distrib.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986)). Because the District Courts' order and docket are public records, the first and third exhibits are appropriate for judicial notice. <u>See, e.g.</u>, <u>Irvin v. Madrid</u>, No. CV-16-1198-DMG(JEMx), 2016 WL 9132877, at *1 (C.D. Cal. Dec. 8, 2016).

A court may also "take judicial notice of the *existence* of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents." <u>Peel v. BrooksAmerica Mortg. Corp.</u>, 788 F. Supp. 2d 1149, 1158 (C.D. Cal. 2011)(emphasis added)(citations omitted). Because the second exhibit contains only a copy of the docket and not the rulings, the Court can take judicial notice of it. Thus, the Court **GRANTS** Defendants' First RJN in its entirety [119].

> b. *Defendants' Second Request for Judicial Notice is **<u>GRANTED</u>***

Additionally, Defendants seek judicial notice ("Defendants' Second RJN") of two orders entered by the U.S. District Court of the Central District of California, Honorable S. James Otero, in the matter of <u>GemCap Lending I, LLC v. Crop USA Insurance Agency,</u>

Inc., et al., namely, (1) the Order Granting in Part and Denying in Part Defendant CGB Diversified Services, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint under FRCP 12(b)(6) and 9(b); and (2) the Order Granting Defendant CGB Diversified Services, Inc.'s Motion for Summary Judgment as to All Claims. Defs.' Req. for Jud. Ntc. in Supp. of Defs.' Opp'n ("Defs.' Second RJN") 2:5-21, Exs. 1-2, ECF No. 140. Plaintiff did not oppose Defendants' Second RJN.

Like in Defendants' First RJN, these two District Court orders are matters of public record. Accordingly, the Court **GRANTS** Defendants' Second RJN in its entirety [140].

> c. *Plaintiff's First Request for Judicial*
> *Notice is **GRANTED** in part and **DENIED** in*
> *part*

In support of its Opposition, Plaintiff requests judicial notice of the following ("Plaintiff's First RJN"): (1) Defendants' Motion to Dismiss the Second Amended Complaint [25]; (2) Plaintiff's Opposition to the Motion to Dismiss [30]; (3) Defendants' Reply in Support of the Motion to Dismiss [32]; (4) the Court's Order Denying the Motion to Dismiss [36]; (5) Plaintiff's Motion for Partial Summary Judgment [120-1]; and (6) the Polk County, Iowa Court ruling and order in the matter of Church Crop Insurance Services, Inc., v. GemCap Lending I, LLC, Case No. EQCE077193. Pl.'s Req. for Jud. Ntc. in Supp. of Pl.'s Opp'n

("Pl.'s First RJN"), 2:13-3:3, Exs. Y, Z, AA, BB, CC, and DD, ECF No. 141-12.

Because "it is well established that a court can take judicial notice of its own files and records under Rule 201," <u>Gerritsen v. Warner Bros. Ent'mt Inc.</u>, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015), the Court **GRANTS** Plaintiff's First RJN as to the first five exhibits [141-12].

As discussed, while a court may judicially notice the existence of another court's opinion, it cannot "accept as true the facts found or alleged in such documents." <u>Peel</u>, 788 F. Supp. 2d at 1158. Plaintiff seeks judicial notice of the Iowa court's decision in <u>Church Crop</u>, not to its existence but as to its factual holdings. <u>See</u> Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") 9:9-23, ECF No. 120-1 ("Quarles' Opinion Letters are *Judicially* Declared *False*."). The Court can consider <u>Church Crop</u> as persuasive authority, but "to the extent [Plaintiff] seek[s] to cite that case in support of [its] arguments, judicial notice is also unnecessary: the Court can, and will consider the reasoning of that ruling for whatever persuasive value it may have." <u>Diversified Capital Inv., Inc. v. Sprint Commc'ns, Inc.</u>, No. 15-cv-03796-HSG, 2016 WL 2988864, at *5 (N.D. Cal. May 24, 2016). Therefore, the Court **DENIES** Plaintiff's First RJN as to the sixth exhibit [141-12].[3]

_____

[3] Because the Court denies Plaintiff's First RJN as to this Iowa court ruling, it is unnecessary to address Defendants'

In sum, the Court **GRANTS** Plaintiff's First RJN as to the five docket entries in the instant case, but **DENIES** Plaintiff's First RJN as to the <u>Church Crop</u> opinion [141-12].

### d. *Plaintiff's Second Request for Judicial Notice is* ***GRANTED***

In connection with its Reply, Plaintiff requests judicial notice ("Plaintiff's Second RJN") of Defendants' Reply in Support of Defendants' Motion to Strike Expert Report of Stanley W. Lamport [132]. ECF No. 156-6. Because courts "may take judicial notice of court filings and other matters of public records," <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted), the Court **GRANTS** Plaintiff's Second RJN [156-6].

### 2. <u>Evidentiary Objections</u>

### a. *Plaintiff's Objections to Documents Produced by Cohen Tauber and the Green Leaf Direction to Pay Are* ***OVERRULED***

Plaintiff objects to the following documents that Adam Stein of Cohen Tauber Spievack & Wagner P.C. ("Cohen Tauber")[4] produced during discovery: (1) an email attachment, "Form of Opinion of Counsel to Borrowers and Guarantors," dated November 8, 2011 [118-

---

hearsay objection and Plaintiff's response. Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply") 20 n.6, ECF No. 150; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply") 12 n.4, ECF No. 156.

[4] Cohen Tauber represented Plaintiff in the Loan transactions. Defs.' SUF ¶¶ 3, 10.

5]; (2) an email attachment, "Certificate of Officer of AIA Services Corporation and AIA Insurance, Inc." [118-18]; and (3) an email attachment of a lien and litigation report dated January 30, 2013 [118-24, 118-25] (collectively, the "Stein emails"). Pl.'s Objs. to Fretty Mot. Decl. ¶¶ 1-6, ECF No. 141-14. Additionally, Plaintiff objects to the document entitled, "Irrevocable Order and Direction to Pay, to Green Leaf . . . from Crop USA" [118-30] ("Green Leaf Direction to Pay"). Id. ¶¶ 11-12. The grounds for each objection are identical: hearsay, lack of personal knowledge/foundation, improper "expert" testimony of non-expert, improper authentication, and improper speculation. Id. ¶¶ 1-6, 11-12. Plaintiff also objected to the first Stein email attachment of "Form of Opinion" and the Green Leaf Direction to Pay on relevance grounds. Id. ¶¶ 1-2, 11-12.

The Court **OVERRULES** Plaintiff's foregoing objections because they "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." United States v. HIV Cat Canyon, Inc., 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); see also Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013)(refusing to "scrutinize each objection and give a full analysis of identical objections"); Amaretto Ranch Breedables v. Ozimals, Inc., 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012)

("This Court need not address boilerplate evidentiary objections." (citation omitted)); <u>Capitol Records, LLC v. BlueBeat, Inc.</u>, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010)(noting that "it is often unnecessary and impractical" to scrutinize "boilerplate recitations of evidentiary principles or blanket objections" (citation omitted)).

However, even assuming Plaintiff properly developed its evidentiary objections, the foregoing evidence is nevertheless admissible. For instance, Defendants introduced this evidence to show Plaintiff was on notice of the allegedly omitted information and, as such, could not have reasonably relied on Defendants' alleged misrepresentations or concealment. Defs.' Mot. for Summ. J. ("Defs.' Mot.") 2:23-25, 5:1-3, 17:25-27, 25:7-11, ECF No. 116. Because Defendants did not offer the evidence for the truth of the matter asserted, it is not hearsay. <u>See</u> <u>Entous v. Viacom Int'l, Inc.</u>, 151 F. Supp. 2d 1150, 1157 n.5 (recognizing the non-hearsay purpose of showing the state of plaintiff's knowledge).

Moreover, Defendants properly authenticated each piece of evidence. For example, each email was uniquely addressed by Cohen Tauber, was produced by the attorney who received or sent the email, and contained identifiable matters related to the loan at issue. <u>See</u> <u>Del Campo v. Am. Corrective Serv., Inc.</u>, 718 F. Supp. 2d 1116, 1123 n.10 (N.D. Cal. June 3, 2010)(finding plaintiff's documents properly authenticated after

plaintiff "attested to their authenticity" and defendants failed to "specify any reason to doubt the authenticity of documents that they themselves produced in discovery"); <u>Brown v. Wireless Networks, Inc.</u>, No. C-07-4301-EDL, 2008 WL 4937827, at *4 (N.D. Cal. Nov. 17, 2008)(holding that the "e-mails are authenticated because of their distinctive characteristics," such as their signature blocks and contents).

Based on the foregoing, the Court **OVERRULES** Plaintiff's objections to the Stein emails and the Green Leaf Directive to Pay.

> b. *Plaintiff's Objections to Expert Reports Are **OVERRULED***

Plaintiff objects to the Initial Expert Report of Arthur Norman Field ("Field") [118-27] in its entirety on the following grounds: hearsay, lack of personal knowledge/foundation, improper opinion testimony, improper "expert" testimony of non-expert, improper authentication, improper speculation, and relevance. Pl.'s Objs. to Fretty Mot. Decl. ¶¶ 7-8. Plaintiff also objects to the Expert Report of its own expert, Stanley W. Lamport ("Lamport") [118-28] on the following grounds: hearsay, lack of personal knowledge/foundation, improper authentication, and improper speculation. <u>Id.</u> ¶¶ 9-10.

As discussed, the Court need not scrutinize each boilerplate objection. <u>HIV Cat Canyon</u>, 213 F. Supp. 3d at 1257. Despite that, the Court turns to the merits

of Plaintiff's objections that both expert reports are improper "expert" testimony of non-experts. "To be admissible, expert testimony must (1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge." <u>United States v. Vallejo</u>, 237 F.3d 1008, 1019 (9th Cir. 2001).

First, both experts discuss the scope of the duty an attorney owes when providing an opinion letter, which is beyond the common knowledge of the average layman. <u>See</u> <u>Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP</u>, 593 F. Supp. 2d 1153, 1165 (S.D. Cal. 2008)("In a legal malpractice action, expert testimony is required to establish . . . the propriety of the particular conduct by the practitioner in particular circumstances."). Namely, Field asserts that the lawyer must believe the opinion letter "is correct, prepared in accordance with customary practice and is fair, objective and not misleading."[5] Field Report 23-

---

[5] Additionally, Field notes the "four corners" approach in construing opinion letters, meaning that parties cannot characterize the opinion as stating anything not explicit in it or provided by custom. Fretty Mot. Decl., Ex. 26 ("Field Report") at 14 (citing <u>Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood</u>, 605 N.E.2d 318 (N.Y. 1992)). Neither Defendants nor Field cite to California authority for the "four corners" approach. <u>See</u> Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n") 9:26-27, ECF No. 141. Nevertheless, the admissibility of the Field Report is unaffected because it meets the Ninth Circuit's criteria for expert testimony. <u>See</u> <u>Vallejo</u>, 237 F.3d

24 (citing Restatement of Law Governing Lawyers § 95).
On the other hand, Lamport claims that an attorney
drafting an opinion letter "is subject to the same
duties and liabilities that extend to other agents" of
the client.  Fretty Mot. Decl., Ex. 27 ("Lamport
Report") at 5.  He explains that the attorney must also
reveal any known doubts about the client's or the
attorney's representations.  <u>Id.</u> at 6, 8.

Second, Field and Lamport both are sufficiently
knowledgeable in connection with attorney duties.  For
instance, Field has experience in receiving and
providing third party opinions, co-authored a three-
volume treatise on third party opinions, chaired the
three principal national legal opinion letter groups,
and has been qualified as an expert witness within the
past four years.  Field Report 2-3.  Moreover, Lamport
has been qualified as an expert on lawyer conflicts of
interest in numerous California courts, served on the
Commission for the Revision of the California Rules of
Professional Conduct and as a special adviser to the
State Bar in issuing formal ethics opinions, and was
the contributing author of Matthew Bender's Attorney
Ethics Handbook.  Lamport Report 1-2.

Third, their opinions are reasonable.  Both experts

at 1019.  Indeed, Field otherwise relies on California
authorities and national standards, and the Court considers the
Field Report as to such assertions.  <u>See, e.g.</u>, Field Report 11
(discussing the TriBar Opinion Committee, which the California
Bar recognizes as the "national standard setter"), 22 (citing a
California Bar Report).

reviewed various documents filed in this case, including the operative Complaint, deposition transcripts, and Loan documents. Field Report 3-4; Lamport Report, Ex. C. Thereafter, they formulated opinions on the scope of Defendants' duty, if any, and whether Defendants breached their duty. See Vallejo, 237 F.3d at 1020 (finding reliable the expert's opinion based on extensive review of relevant records).

Because the expert opinions are admissible under the three prongs of the Vallejo standard, the Court **OVERRULES** Plaintiff's objections to the Field Report and the Lamport Report. See also infra Part II.B.3 (denying Defendants' Motion to Strike the Lamport Report).

      c.  *Plaintiff's Objections to the Declaration of James Gatziolis Are **OVERRULED***

Plaintiff objects to parts of the Declaration of James Gatziolis ("Gatziolis Declaration") [139-13], which Defendants filed in support of their Opposition to Plaintiff's Motion. Pl.'s Objs. to Decl. of James Gatziolis ("Pl.'s Objs. to Gatziolis Decl.") ¶¶ 1-3, ECF No. 156-5.

First, Plaintiff objects to Gatziolis' statements that (1) "no one discussed the 2009 Administrative Agreement with me in the 2011 or 2013 time periods to cause me to remember its existence"; (2) he "had never seen a copy of the 2009 Administrative Agreement" at the time of the Loan transactions; (3) he did not know

22

"whether the Administrative Agreement was still in effect" at the time of the Loan transactions; and (4) he never "considered . . . whether the 2009 Administrative Agreement [was a] 'Material Contract.'" Decl. of James Gatziolis ("Gatziolis Decl.") ¶ 4, ECF No. 139-13. Plaintiff contends that these statements are irrelevant; speculative; prejudicial, confusing, and misleading; and not credible due to a prior inconsistent statement. Since Plaintiff fails to state the reason for every objection, the Court need only rule on Plaintiff's argument that this is irrelevant and a sham affidavit.[6] See HIV Cat Canyon, 213 F. Supp. 3d at 1257.

Plaintiff emphasizes that the "relevant fact is that . . . Gatziolis heard or knew" of, not discussed, the Administrative Agreement. Pl.'s Objs. to Gatziolis Decl. ¶ 1. However, Gatziolis suggests that he did not remember the Administrative Agreement or believe it was pertinent because he had not discussed it with anyone at the time Plaintiff entered into the Loan with Crop USA. Gatziolis Decl. ¶ 4. That distinction is relevant to whether Gatziolis knowingly concealed the Administrative Agreement when he drafted the opinion

---

[6] Nevertheless, the statements are not speculative because Gatziolis qualifies the statements, "To my knowledge . . . ." Fed. R. Evid. 402. Furthermore, any risk of undue prejudice, confusion of issues, or misleading the jury does not substantially outweigh the probative value of the statements. Fed. R. Evid. 403. The evidence clearly demonstrates Gatziolis' state of mind at the time of the opinion letters. Accordingly, Plaintiff's objections are **OVERRULED**.

letters, or misrepresented his current knowledge as to it.  Thus, it is relevant, so the Court **OVERRULES** the objection.

The Ninth Circuit employs the sham affidavit rule to prevent a party from creating an issue of fact through an affidavit that contradicts the party's prior deposition testimony.  <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012)(citations omitted).  But this rule should be applied cautiously as it is in tension with the prohibition against credibility determinations in summary judgment rulings.  <u>Id.</u> (citation omitted).  In order to strike an affidavit under this rule, the "court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous.'"  <u>Id.</u> (citation omitted).

In his deposition, Gatziolis testified that he had heard of the Administrative Agreement before he prepared the 2011 Opinion Letter.  Steinman Opp'n Decl., Ex. J at 13:15-19.  The Gatziolis Declaration does not contradict that testimony because in it, Gatziolis merely asserts he had not discussed or considered it concurrently with the Loan transactions.  Accordingly, there is no "clear and unambiguous" inconsistency such that the Court would find a sham contradiction.  The Court hereby **OVERRULES** Plaintiff's sham affidavit objection.

In his Declaration, Gatziolis attests that he did not state that he had worked on a prior crop insurance loan and that he actually had not worked on one at the time of the July 19 meeting. Gatziolis Decl. ¶ 5. He also explained why he allegedly did not deny the statements Lander attributed to him after receiving the letter or at his deposition. Id. ¶ 6 (believing other counsel would respond). Plaintiff objects to each assertion pursuant to the sham affidavit rule. Pl.'s Objs. to Gatziolis Decl. ¶¶ 2-3. The Court does not find that these are sham Declarations because Gatziolis explains the supposed contradiction between his earlier testimony that the letter accurately captured the meeting and this affidavit that the specific sentences attributed to Gatziolis are incorrect. See Gatziolis Decl. ¶ 6 ("I did not recall that allegation from Mr. Lander's letter at the time of my deposition."). Thus, Plaintiff's objections are **OVERRULED.**

> d. *Plaintiff's Objections to the Declaration of Douglas A. Fretty in Support of Defendants' Opposition Are **<u>SUSTAINED</u>** in Part and **<u>OVERRULED</u>** in Part*

Plaintiff objects to the following exhibits of the Declaration of Douglas A. Fretty filed in Support of Defendants' Opposition ("Fretty Opposition Declaration"): (1) Plaintiff's internal memorandum regarding the Loan [147]; (2) Richard Ellis' deposition transcript [139-5]; (3) an email from Crop USA to

Plaintiff regarding "Cash Disbursements" made the week of October 19, 2012 [139-6]; and (4) an email from Crop USA to Plaintiff regarding disbursements made the week of November 16, 2012 [139-7]. ECF No. 156-5. As in Plaintiff's other objections, Plaintiff fails to provide more than mere boilerplate recitations of the Federal Rules of Evidence, e.g., hearsay, lack of personal knowledge, improper authentication, best evidence rule, irrelevant, and improper legal conclusion. Although the Court need not rule on each individually, the Court finds that most of the objections lack merit.

First, Plaintiff's internal memorandum is not hearsay because it is a statement made by and offered against an opposing party. It is also not hearsay as Defendants present it as evidence that Plaintiff was on notice about the commission structure. Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n") 8:16-20, ECF No. 139. There is no evidence the declarant lacked personal knowledge as to the content, especially when accounting for the specific details reflected in it. It was properly authenticated because Plaintiff admits that it is its own memorandum. See Pl.'s Reply 24:20-22. Finally, the best evidence rule is not violated because the memorandum itself is offered. Thus, the Court **OVERRULES** these objections to the internal memorandum.

Second, the Court **SUSTAINS** Plaintiff's objection to Fretty's statement about Richard Ellis' deposition.

The Court only relies on the transcript itself under the best evidence rule.

Third, the emails from Crop USA to Plaintiff regarding Crop USA's "Cash Disbursements" are not hearsay because Defendants offer them for the non-hearsay purpose of notice. Indeed, the emails to Plaintiff are relevant in that they disclosed Crop USA's payments of legal fees to Crop USA's and AIA's counsel in the Litigation, arguably revealing to Plaintiff that there was an administrative agreement with AIA and ongoing Litigation. Defs.' Opp'n 8:25-9:5. There is no evidence of lack of personal knowledge, and the exhibits were properly authenticated in Richard Ellis' deposition. Fretty Opp'n Decl., Ex. 5 ("R. Ellis Dep.") 297:13-298:24. As such, Plaintiff's objections to these exhibits are **OVERRULED.**

> e. *Defendants' Objections to Plaintiff's Evidence Are **<u>SUSTAINED</u>** in Part and **<u>OVERRULED</u>** in Part*

In response to Plaintiff's Motion, Defendants object to portions of the Declaration of Todd M. Lander in Support of Plaintiff's Motion ("Lander Motion Declaration") [120-8] and its exhibits [120-9], the Declaration of Richard Ellis in Support of Plaintiff's Motion ("Richard Ellis Motion Declaration") [120-10], the Declaration of David Ellis ("David Ellis Declaration") [120-12], and the Declaration of Peter Steinman in Support of Plaintiff's Motion ("Steinman

Motion Declaration") exhibits [120-14]. ECF No. 139-15. In response to Plaintiff's Opposition, Defendants object to portions of the Declaration of R. John Taylor ("Taylor Declaration") [141-1], the Declaration of Peter Steinman in Support of Plaintiff's Opposition ("Steinman Opposition Declaration") exhibits [141-5], the Declaration of Richard Ellis in Support of Plaintiff's Opposition ("Richard Ellis Opposition Declaration") [141-6], and the Declaration of Todd M. Lander in Support of Plaintiff's Opposition("Lander Opposition Declaration") [141-9] and its exhibits [141-10]. ECF No. 153. The Court addresses these together because much of the evidence and corresponding objections are the same.

Many of the objections are based on the declarants' lack of competence to testify to what a deponent testified to, see Clark v. County of Tulare, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010), and the best evidence rule, see Fed. R. Evid. 1003. The Court **SUSTAINS** each of these objections and hereby relies solely on the documents themselves as opposed to the declarants' quotations of and commentary on the documents. Defs.' Objs. to Pl.'s Evid. in Supp. of Pl.'s Mot. ("Defs.' Objs. to Pl.'s Mot.") ¶¶ 2-4, 6, 8-13, 15, 19, 21-26, 28, ECF No. 139-15; Defs.'s Objs. to Pl.'s Evid. in Supp. of Pl.'s Opp'n ("Defs.' Objs. to Pl.'s Opp'n") ¶¶ 3-5, 8, 10, 16-21, 23, 44-46, ECF No. 153.

On hearsay grounds, Defendants object to the Lander Motion Declaration and Lander Opposition Declaration's references to a July 24, 2013 letter from Todd M. Lander ("Lander") of Cohen Tauber to Gatziolis and the letter itself. Defs.' Objs. to Pl.'s Mot. ¶¶ 1, 5; Defs.' Objs. to Pl.'s Opp'n ¶¶ 43, 47. As to the references in the Lander Motion Declaration and Lander Opposition Declaration, the Court **SUSTAINS** Defendants' objections because they quote a letter that is an out-of-court statement offered for the truth of the matter asserted—what the letter says. Fed. R. Evid. 801, 802.

On the other hand, the letter itself falls under the hearsay exemption for opposing party statements. Fed. R. Evid. 801(2)(B) (a statement that the opposing "party manifested that it adopted or believed to be true" is not hearsay). Lander wrote to Gatziolis purporting to recount Gatziolis' statements at their July 19 meeting. Lander Mot. Decl., Ex. H at 10-11. Specifically, Lander wrote that Gatziolis indicated that "based on personal experience in another crop insurance matter where a lender failed economically, [Gatziolis] believed that Diversified was obligated" to pay commissions to the sub-agents "irrespective of the status of the GemCap-Crop loan." Id. at 10. Gatziolis responded by saying he took a "quick look" at the letter without refuting any of its contents, Lander Mot. Decl., Ex. I at 13, and later testified that while he did not "remember [the letter] that well," he

thought Lander "did capture the July 19 meeting relatively accurately," Steinman Mot. Decl., Ex. J at 28:17-29:9.  In his Declaration, Gatziolis asserts that "Lander's statement was misleading," but he "did not see a reason to respond" to the letter because other counsel was responsible for responding.  Gatziolis Decl. ¶ 6.  The Court is not persuaded given that Lander attributed this statement directly to Gatziolis, and a person in his position would have likely responded to it given that he responded at all.  Thus, the Court **OVERRULES** Defendants' objections to the admission of the letter.[7]  Defs.' Objs. to Pl.'s Mot. ¶ 5; Defs.' Objs. to Pl.'s Opp'n ¶ 47.

Additionally, Defendants object to the Richard Ellis Motion Declaration and David Ellis Declaration's characterization of Gatziolis's aforementioned statements at the July 19 meeting.  Defs.' Objs. to Pl.'s Mot. ¶¶ 7, 20.  Because the characterization lacks foundation, this objection is **SUSTAINED**.  <u>See</u> <u>Medina v. Multaler, Inc.</u>, 547 F. Supp. 2d 1099, 1105 n.8 (C.D. Cal. 2007)(without factual support, an opinion is inadmissible).

Defendants also object to a few of the Richard Ellis Motion Declaration and David Ellis Declaration's purported legal arguments.  Defs.' Objs. to Pl.'s Mot.

---

[7] The Court additionally agrees with Plaintiff that California's litigation privilege does not apply to this business meeting where Crop USA merely sought to devise a plan to satisfy the Loan in the face of default.  Pl.'s Reply 17:18-20.

¶¶ 14, 16, 18, 27-31; Defs.' Objs. to Pl.'s Opp'n
¶¶ 22, 24, 26.  Legal arguments are inappropriate in
declarations.  See King Cty. v. Rasmussen, 299 F.3d
1077, 1082 (9th Cir. 2002)("Declarations, which are
supposed to 'set forth facts as would be admissible in
evidence,' should not be used to make an end-run around
the page limitations of Rule 7 by including legal
arguments outside of the briefs." (citing Fed. R. Civ.
P. 56(c)).  These objections are thus **SUSTAINED**.
However, the statement, "[Diversified] refused to pay
the Gross Commissions to [Plaintiff]," is not a legal
argument but a fact.  See Defs.' Objs. to Pl.'s Mot.
¶ 17; Defs.' Objs. to Pl.'s Opp'n ¶ 25.  As such, the
objection to this statement is **OVERRULED.**

Attached to the Steinman Motion Declaration is
Taylor's deposition in the matter of GemCap Lending I,
LLC v. Crop USA Insurance Agency, Inc., et al., Case
No. 2:23-cv-5504).  Steinman Mot. Decl., Ex. M.  The
Court agrees with Defendants that this testimony is
inadmissible hearsay because Defendants were not
parties to the case and Plaintiff did not have the same
motive to cross-examine Taylor that Defendants would on
the subject matter.  Hub v. Sun Valley Co., 682 F.2d
776, 778 (9th Cir. 1982).  Indeed, Plaintiff would be
motivated by the desire to reclaim the unpaid balance
on the Loan, and Defendants would be motivated to avoid
liability.  Therefore, Defendants' objection to this
testimony is **SUSTAINED**.  Defs.' Objs. to Pl.'s Mot.

¶ 32; Defs.' Objs. to Pl.'s Opp'n ¶ 6.

Defendants object to the Steinman Motion
Declaration Exhibit P, containing deposition testimony
of their expert, Field.  Defs.' Objs. to Pl.'s Mot.
¶ 33; Defs.' Objs. to Pl.'s Opp'n ¶ 7.  Field testified
that "a stream of commissions coming from insurance
companies, some of which would have been paid on to
agents," was the Collateral to be deposited in the
Lockbox.  Steinman Mot. Decl., Ex. P at 63:2-6.  Field
then said that his understanding was that Gross
Commissions were part of that Collateral.  Id. at 63:7-
10.  Defendants claim that it is hearsay as an
inadmissible statement of fact by an expert witness.
However, Field was testifying to his *understanding* of
the Collateral.  Because his understanding is important
to the determination of reliability of his expert
opinion, this objection is **OVERRULED.**

As discussed above, the Court denied Plaintiff's
Request for Judicial Notice of the Church Crop order.
Accordingly, Defendants' objections to this order are
**SUSTAINED**.  Defs.' Objs. to Pl.'s Mot. ¶ 34; Defs.'
Objs. to Pl.'s Opp'n ¶¶ 2, 48; Steinman Mot. Decl., Ex.
R.

Defendants object to a few statements in the Taylor
Declaration and Richard Ellis Opposition Declaration on
the grounds of lack of personal knowledge.  Defs.'
Objs. to Pl.'s Opp'n ¶¶ 1, 9, 15.  For instance, Taylor
asserted, "As counsel, Gatziolis knew of the insurer's

position in 2008." Taylor Opp'n Decl. ¶ 16. Richard
Ellis said that, "unbeknownst to [Plaintiff], this
pledge structure (i.e., Gross Commissions as
collateral) was identical to the failed pledge
structure in a prior crop insurance matter handled by
borrower Crop USA's counsel, Defendants." R. Ellis
Opp'n Decl. ¶ 24. As to these statements, Defendants'
objections are **SUSTAINED** because the declarants lacked
foundation. Nevertheless, Richard Ellis also declared
that "unknown to [Plaintiff], multiple lawsuits had
been initiated against Crop USA." R. Ellis Opp'n Decl.
¶ 11. Defendants' corresponding objection is **OVERRULED**
because Richard Ellis, as co-president of Plaintiff,
has personal knowledge of the Litigation and what
Plaintiff knew of it.

Finally, Defendants make several objections to the
Richard Ellis Opposition Declaration—namely, statements
about Richard Ellis' alleged telephone conversation
with Gatziolis—arguing that it is a sham affidavit.
Defs.' Objs. to Pl.'s Opp'n ¶¶ 11-14. Defendants claim
this Declaration is the first time Richard Ellis
mentioned the statements he attributed to Gatziolis.
Id. ¶ 11. Moreover, they argue Richard Ellis has not
offered a "credible explanation as to how his
recollection was refreshed." Id. (citing Yeager, 693
F.3d at 1080).

As discussed, in order to strike a declaration
under the sham affidavit rule, the Court must find that

a clear and unambiguous inconsistency, making the
contradiction with former testimony a sham.  See
Yeager, 693 F.3d at 1080.  In Plaintiff's interrogatory
responses, Plaintiff lists what due diligence it
conducted in preparation for the Loan.  Fretty Mot.
Decl., Ex. 25 at 8-9 (response to interrogatory five).
Plaintiff answered that Gatziolis advised Richard Ellis
by phone that the Litigation "had been definitively
decided and/or settled, or was imminently to be finally
decided and/or settled," in Taylor and Crop USA's favor
and "would have no impact on . . . the [C]ollateral,"
telling Plaintiff "not to worry about it."  Id. at 8.
That response is consistent with Richard Ellis'
Declaration, and Defendants do not contest the accuracy
of that response.  Defs.' SUF ¶ 32.  Moreover, contrary
to Defendants' position, Richard Ellis was not "vague
and evasive" in his deposition testimony.  Defs.' Objs.
to Pl.'s Opp'n ¶ 11.  Rather, Richard Ellis apparently
answered counsel's questions to the best of his
understanding.  See, e.g., Defs.' Reply, Ex. 8 at 59:9-
10 ("I don't know how to answer that question.").
Because Richard Ellis testified that Gatziolis
portrayed the Litigation to mainly concern AIA and
Taylor, not Crop USA, the Court does not find his
Declaration to be a sham.  See id. at 61:18-22.  As
such, Defendants' objection is **OVERRULED.**
///
///

34

### f. *Defendants' Objections to the Declaration of Melvin Gilbert Are **<u>SUSTAINED</u>** in part and <u>OVERRULED</u> in part*

Defendants object to many parts of the Declaration of Melvin Gilbert ("Gilbert Declaration") [141-8]. Primarily, the objections are based on lack of personal knowledge and hearsay because Melvin Gilbert's ("Gilbert") statements include "alleged 'information' that Gilbert was allegedly 'recently' told," and Gilbert fails to reveal the source of such information. Defs.' Objs. to Pl.'s Opp'n 22 n.1. The Court agrees with Defendants and **SUSTAINS** these objections. <u>Id.</u> ¶¶ 27, 31, 34, 36-38, 40-42; <u>see</u> <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1183 (9th Cir. 1988) (excluding an exhibit as hearsay on summary judgment).

Relying on the Best Evidence Rule, Defendants object to some of Gilbert's descriptions of the contents of the Loan documents. <u>Id.</u> ¶¶ 29, 33, 35, 39. These objections are **SUSTAINED**, and the Court will only consider the documents themselves for their content.

Finally, like in some of their objections to the Richard Ellis Opposition Declaration, Defendants object to Gilbert's assertions about Richard Ellis' telephone call with Gatziolis on the basis of the sham affidavit rule. <u>Id.</u> ¶¶ 28, 30, 32. As for the Richard Ellis Opposition Declaration, the Court finds no clear and unambiguous inconsistency, which would render the contradiction a sham. <u>See</u> <u>Yeager</u>, 693 F.3d at 1080.

Instead, the Court finds Gilbert's deposition testimony to be entirely consistent with his declaration.  At his deposition, Gilbert explained that Gatziolis told Richard Ellis on the phone that the Litigation would not negatively impact the Collateral.  Defs.' Reply, Ex. 9 at 77:15-78:20.  In his Declaration, Gilbert confirms this.  Decl. of Melvin Gilbert ¶¶ 13-15, ECF No. 141-8.  Defendants' objections are thus **OVERRULED.**

    3.   The Court **DENIES** as **MOOT** Plaintiff's Motion to Strike Expert Robert L. Kehr's Report [113], **DENIES** Defendants' Motion to Strike Expert Stanley W. Lamport's Report [114], and **DENIES** as **MOOT** Defendants' Motion to Strike Portions of Expert Douglas E. Johnston, Jr.'s Report [115]

Because the Court grants summary judgment in favor of Defendants without relying on either of the corresponding expert reports, the Court **DENIES** the following Motions as **MOOT**: (1) Plaintiff's Motion to Strike Defendants' Expert Robert L. Kehr's "Rebuttal" Witness Report and Preclude Kehr from Offering Any Expert Testimony [113]; and (2) Defendants' Motion to Strike Portions of the Expert Report of Douglas E. Johnston, Jr. [115].

As for Defendants' Motion to Strike the Expert Report of Stanley W. Lamport [114], the Court turns to the merits because the parties discuss the Lamport Report in their summary judgment papers.  See Defs.'

Mot. 9:1-3, 10:4-7, 22 n.4; Defs.' Opp'n 8:9-11, 13:17-20, 13 n.4; Defs.' Reply 13 n.4; Pl.'s Reply 3 n.3; see also supra Part II.B.2.b (overruling Plaintiff's objections to the Lamport Report).

An expert witness cannot render an opinion as to a legal conclusion, as "instructing the jury as to the applicable law is the distinct and exclusive province of the court." Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir. 2008)(citation omitted). Lamport's expert testimony sets forth various California Model Rules of Professional Conduct, cases, statutes, and restatement sections setting forth the duties owed between the borrower's counsel and the lender. See generally Mot. to Strike Lamport Report, Ex. 2 at 4-8, ECF No. 114-3. An expert's interpretations of statutes and regulations and whether a party violated those laws are "statements of the law and legal conclusions" that "should be excluded." Willard v. Foremost Ins. Co., EDCV 13-0262 JGB (DTBx), 2014 WL 12589331, at *3 (C.D. Cal. May 9, 2014). To the extent that Lamport offers statements of law that the parties rely upon in their respective Summary Judgment Motions, the Court may consider them in determining the applicable duty owed, a question of law for the Court to resolve. The Court does not, however, consider Lamport's ultimate conclusions regarding Defendants' duty of care in its analysis for the cross-Motions for Summary Judgment.

Defendants' arguments that Lamport improperly testifies as to their "knowledge, intent, and state[s] of mind" are not well-taken. Mot. to Strike Lamport Report 8:11-12. Defendants rely on _Siring v. Oregon State Board of Higher Education ex rel. Eastern Oregon University_, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013), which stated that an expert witness could not opine as to a specific motive or subjective state of mind underpinning a party's or witness's decisions. _See also_ _M.H. v. Cnty. of Alameda_, Case No. 11-cv-02868-JST, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015)("[E]xperts cannot testify as to Defendants' actual, subjective states of mind."). Here, Lamport repeatedly opines regarding what Defendants "knew or should have known" about various doubts that would affect the Loan and Loan Agreement. _See generally_ Mot. to Strike Lamport Report, Ex. 2. In _Alameda_, the court explained that testimony about what defendants knew or should have known is permissible regarding the relevant standard of care in law enforcement. 2015 WL 54400, at *2. Here too, the Court finds that Lamport's opinions regarding what Defendants knew or should have known is not a legal conclusion about their subjective mindset, but rather shows how their conduct did not align with the relevant standard of care for legal opinion writing.

Similarly, the Court disagrees that Lamport improperly applies his self-provided legal standards to

factual findings to conclude that Defendants breached a duty owed to Plaintiff. Mot. to Strike Lamport Report 10:7-12. Expert witnesses are not expressly prohibited from rendering opinions on whether a defendant met the relevant standard of care. See Iorio v. Allianz Life Ins. Co. of N. Am., 2010 WL 11508761, at *9 (S.D. Cal. Jan. 27, 2010)(expert opinions regarding whether defendant deviated from standard of care were relevant to issues in the case); Vaxiion Therapeutics, 593 F. Supp. 2d at 1165 ("In a legal malpractice action, expert testimony is required to establish . . . the propriety of the particular conduct by the practitioner in particular circumstances."). Moreover, Defendants' own standard-of-care expert, Field, expressly offers conclusions as to whether Defendants satisfied the requisite standard of care.

Lastly, Defendants attack Lamport's qualifications regarding customary practice in drafting legal opinion letters. Mot. to Strike Lamport Report 11:27-28. Defendants conclusively argue that Lamport lacks specific expertise in preparing or assessing opinion letters, and that his experience is only in professional ethics. Id. at 11:27-12:2. Lamport's experience is well-suited for articulating the requisite standard-of-care in a legal malpractice claim, and Defendants do not clearly set forth the key qualifications he lacks to opine on opinion letters, beyond the fact that his background is in professional

ethics.  Accordingly, the Court **DENIES** Defendants'
Motion to Strike the Lamport Report [114].

    4.   The Court **GRANTS** Defendants' Motion for Summary
Judgment [116] and **DENIES** Plaintiff's Motion
for Partial Summary Judgment [120-1]

The Court turns to the merits of the parties'
respective Motions for Summary Judgment [116, 120-1].
Defendants seek summary judgment in their favor as to
all four of Plaintiff's causes of action.  Defs.' Mot.
9:6-20, 25:27-28; Defs.' Reply 25:7-11, 25:5-16.
Plaintiff seeks partial summary judgment as to the
following elements of the second, third, and fourth
claims (intentional misrepresentation, negligent
misrepresentation, and concealment): (1) duty,
(2) breach, and (3) justifiable reliance.[8]  Pl.'s Mot.
1:18-22, 25:21-22; Pl.'s Reply 1:2-4.

In its TAC, Plaintiff alleges the following causes
of action: (a) professional malpractice;
(b) intentional misrepresentation; (c) negligent
misrepresentation; and (d) concealment.  TAC ¶¶ 61-90.
The Court discusses each in turn.

_____

   [8] As discussed below, the former two elements are only part
of Plaintiff's professional malpractice claim, not the claims for
which Plaintiff seeks summary judgment.  See also Pl.'s Reply
2:6-7 ("[T]here is no 'standard of care' analysis with the
[intentional misrepresentation, negligent misrepresentation, and
concealment claims], since these are not based on professional
negligence.").  Because the Court finds that summary judgment is
appropriate for Defendants on all claims, this discrepancy is
immaterial.

### a. *Professional Malpractice*

The first issue is whether, as a matter of law, Defendants committed professional malpractice. The elements of a professional malpractice[9] claim are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Vaxiion Therapeutics, 593 F. Supp. 2d at 1165 (quoting Osornio v. Weingarten, 29 Cal. Rptr. 3d 246, 254 (Ct. App. 2007)).

### i. *Duty*

An attorney issuing "a legal opinion intended to secure benefit for the client" must use due care, "or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, 128 Cal. Rptr. 901, 906 (Ct. App. 1976); see Osornio, 21 Cal. Rptr. at 259-60. Additionally, a defendant, professional or otherwise, always owes a duty not to

---

[9] Plaintiff sometimes refers to its professional malpractice claim as legal malpractice. See, e.g., Pl.'s Opp'n at 9:11-12. Legal malpractice is a kind of professional malpractice. See Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 491 P.2d 421, 432 (Cal. 1971)(in bank)("A similar but possibly longer absolute limit may be desirable in actions for legal malpractice . . . or indeed in all actions for professional malpractice.").

defraud others.  <u>Vega v. Jones, Day, Reavis & Pogue</u>, 17
Cal. Rptr. 3d 26, 34 (Ct. App. 2004)("Jones Day did
have the same duty others have "'not to defraud
another, even if that other is an attorney negotiating
at arm's length.'" (citation omitted)); <u>Jackson v.
Rogers & Wells</u>, 258 Cal. Rptr. 454, 459 (Ct. App.
1989)("[T]he fact [that an attorney committed fraud in
dealing with a third party] in the capacity of attorney
for a client does not relieve him of liability.").
Thus, a duty of disclosure exists if "the defendant
makes representations but does not disclose facts which
materially qualify the facts disclosed, or which render
his disclosure likely to mislead." <u>Linear Tech. Corp.
v. Applied Materials, Inc.</u>, 61 Cal. Rptr. 3d 221, 2
(Ct. App. 2007); <u>see also</u> <u>Goodman</u>, 556 P.2d at 745;
<u>Neel v. Magana, Olney, Levy, Cathcart & Gelfand</u>, 491
P.2d 421, 429 (Cal. 1971)(in bank).

For instance, in <u>Vega</u>, the defendant law firm
argued that because it owed no duty to disclose the
suppressed transaction to the adverse party in the
merger, it was not liable for concealment.  17 Cal.
Rptr. 3d at 33.  However, because the defendant
"specifically undertook to disclose the transaction" in
the first place, the Court said it was "not at liberty
to conceal a material term." <u>Id.</u>  In the context of
opinion letters, the <u>Roberts</u> court held that the
defendant law "firm had a duty to reveal to plaintiff
[its] doubt as to the status of the partnership as a

general partnership, since the firm knew that
disclosure of this doubt might well be determinative of
plaintiff's decision to make loans to [the firm's
client]." 128 Cal. Rptr. at 906. "Even though
defendants may have believed there was a general
partnership in spite of the claims of some of the
general partners"—and even though the plaintiff did not
allege the opinion was incorrect—the defendants could
be liable for negligent misrepresentation. Id. While
these cases are based on misrepresentation causes of
action, they are pertinent to Plaintiff's professional
malpractice claim because Plaintiff alleges breach by
way of misrepresentation.[10] TAC ¶¶ 63-64, 66.

Plaintiff's expert witness, Lamport, explains that
the foregoing duties do not conflict with the lawyer's

---

[10] The California standard is largely consistent with
Defendants' contention that their duties to Plaintiff are limited
by the information Defendants provided in the Opinion Letters, or
their "four corners." Defs.' Mot. 11:16-20 (citing Field &
Smith, Legal Opinions in Business Transactions at § 3:32 (Prac.
Law Inst. 3d ed. 2014); Prudential Ins., 80 N.Y. 2d at 385-86).
After all, Plaintiff was not Defendants' client, but the adverse
party in the Loan transactions. Id. at 11:4-11. As such,
although Defendants owed no duty to speak, they could not make
misrepresentations through their voluntary disclosures. But
contrary to the "four corners" limitation, Defendants can be
liable for any misrepresentation—whether or not in the Opinion
Letters—just as any other individual would be. Vega, 17 Cal.
Rptr. 3d at 34. On the other hand, Plaintiff's suggestion that
Defendants owed a duty of "full and fair disclosure" of all facts
within their knowledge relating to the statements in the Opinion
Letters is overbroad compared to California law. See Pl.'s Mot.
10:2-4, 12:24-25. Notwithstanding that this language arises from
a California case, it did not involve opinion letters, and,
regardless, is limited to situations where the defendant
undertakes to speak on the matter. See Rogers v. Warden, 125
P.2d 7, 9 (Cal. 1942)("If he speaks at all, he must make a full
and fair disclosure." (emphasis added)).

43

duty to the client because the lawyer must not engage in fraudulent conduct or advance the client's fraud by not disclosing information. Lamport Report 4-5. Defendants' expert witness, Field, adds that lawyers' liability in the context of third-party opinions—as with any duty of care analysis—is linked to customary practice standards. Field Report 5, 11.

In sum, Defendants owed Plaintiff a general duty of care in providing the Opinion Letters as well as a duty to disclose facts that materially qualify the representations Defendants made.

### ii. *Breach*

Plaintiff points to a number of alleged breaches Defendants made in the Opinion Letters and Disclosure Schedule. The Court addresses each in turn and finds that Plaintiff fails to raise a genuine issue of material fact. Fed. R. Evid. 56. Plaintiff's only dispute with the following discussion is based on Plaintiff's mischaracterization of the language in Defendants' Opinion Letters and Gatziolis' statements memorialized in Lander's letter. But these are merely arguments. Based on the actual documents themselves and as a matter of law—law which Plaintiff misconstrues—no reasonable juror could find in Plaintiff's favor.

### (1) *Plaintiff's Ability to Collect Gross Commissions from Diversified*

Plaintiff argues that Defendants concealed their

doubts that Diversified might pay Crop USA's sub-agents instead of Plaintiff in the event of default.[11]   Pl.'s Mot. 13:23-26.   Plaintiff alleges that Gatziolis knew Diversified would do so from his "'personal experience' in 'another crop insurance matter,'" which Gatziolis revealed at his July 19 meeting with Cohen Tauber, Plaintiff's counsel in the Loan transactions.   <u>Id.</u>; Lander Mot. Decl., Ex. H at 10.   According to Plaintiff, Defendants breached their duty by concealing this doubt while asserting in the Opinion Letters' "Knowledge Qualifier" paragraphs that Defendants knew of no facts to lead them to believe that the factual matters in the Loan documents were untrue or inaccurate.   ECF No. 118-3 ("2011 Opinion Letter") at 6; ECF No. 118-11 ("2013 Opinion Letter") at 7. Defendants counter that Plaintiff misconstrues both the "Knowledge Qualifier" as well as Gatziolis' alleged

---

[11] Because Plaintiff did not plead this theory in its TAC, Defendants argue that Plaintiff is barred from seeking summary judgment on it.   Defs.' Opp'n 14:27; <u>see IV Solutions, Inc. v. Conn. Gen. Life Ins. Co.</u>, No. CV-13-9026, 2015 WL 12843822, at *14 (C.D. Cal. Jan. 29, 2015)("Allowing a plaintiff . . . to allege one theory, but then pursue relief on an entirely different theory at summary judgment and trial, is inconsistent with the Federal Rules."); <u>see also Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1292 (9th Cir. 2000).   In its TAC, Plaintiff alleges that Crop USA overstated its borrowing base by including commissions that Diversified paid directly to certain sub-agents, not into the Lockbox.   Defs.' Opp'n 14:21-25; TAC ¶¶ 46(b), 48, 53.   Contrary to Plaintiff's contention that its references to "Collateral" encompass this new theory, Pl.'s Reply 15:11-12, the TAC's only mention of what might happen *in the event of default* is that Plaintiff might need a loan workout to get paid, TAC ¶ 53.   Nevertheless, summary judgment for Defendants on this theory is warranted on the merits.

remarks at the July 19 meeting.[12]  Defs.' Opp'n 17:21-28, 21:9-10.

The "Knowledge Qualifier" paragraph states in relevant part:

> Wherever we indicate that our opinion with respect to the existence or absence of facts is based on our knowledge, our opinion is based solely on (i) the current actual knowledge of the attorneys currently with our firm who have represented [Crop USA] and (ii) the representations and warranties of said parties contained in the Loan Documents; we have made no independent investigation as to such factual matters.  However, we know of no facts which lead us to believe such factual matters are untrue or inaccurate.

2011 Opinion Letter 5; <u>see also</u> 2013 Opinion Letter 6 (same except as to "Amended Loan Documents").

By its terms, the "Knowledge Qualifier" only applies to statements in the Opinion Letters where Defendants indicate their own knowledge as to a particular subject matter.  Defs.' Opp'n 21:23-25. Because Plaintiff fails to point to any reference of "knowledge" regarding Plaintiff's ability to collect Gross Commissions from Diversified, these paragraphs are no basis to hold Defendants liable.

Moreover, Plaintiff's interpretation of Gatziolis' statements at the July 19 meeting fare no better.  The

---

[12] Despite that Defendants dispute that Gatziolis ever said the statements Lander attributes to him in his letter, Gatziolis Decl. ¶¶ 4-6, the Court finds no genuine dispute of *material* fact, Fed. R. Evid. 56.  If Gatziolis made those remarks, Defendants are still entitled to summary judgment because—as discussed below—the remarks do not support a finding that Defendants breached their duty or made any misrepresentation or concealment.

statements appear to represent Gatziolis' opinion in
July 2013 that Diversified might pay commissions to its
sub-agents rather than the Lockbox if Plaintiff
foreclosed on the Loan.  Defs.' Opp'n 17:21-24; Lander
Mot. Decl., Ex. H at 10-11.  These July 2013 statements
do not represent Defendants' subjective knowledge in
November 2011 and February 2013 that Plaintiff was
lending against commissions that Crop USA ultimately
owed to sub-agents.  Defs.' Opp'n 17:25-28; Pl.'s Mot.
6:4-6.  Indeed, Gatziolis testified that his
understanding of the Collateral was consistent with the
definition in the Loan Agreement, "[a]ll of the assets
of CropUSA."  Fretty Opp'n Decl., Ex. 8 at 305:20-22.

Based on the foregoing, the Court finds Defendants
did not conceal doubts as to Plaintiff's ability to
collect under the Loan and did not make any
misrepresentation through the "Knowledge Qualifier."

(2) *Crop USA's Rights and Title to*
*Gross Commissions*

In the Opinion Letters, Defendants opined that
"[t]he provisions of the Loan Agreement create a valid
security interest in favor of [Plaintiff] in the
respective rights, title and interests of [Crop USA] in
and to all Collateral in which a security interest may
be created under Article 9 of the [California] Uniform
Commercial Code."  2011 Opinion Letter 4; 2013 Opinion
5.  This paragraph "does not encompass or address the
priority of any lien or security interest granted or

created pursuant to any of the Loan Documents." 2011 Opinion Letter 8; see also 2013 Opinion Letter 10 (same except as to "the perfection of or the priority of any lien" and "Amended Loan Documents").

Plaintiff argues Defendants meant a valid security interest in the Gross Commissions, which would be a misrepresentation because Gatziolis concurrently believed that Diversified would not honor Crop USA's pledge of Gross Commissions. Pl.'s Mot. 15:13-17. In support of this argument, Plaintiff relies on an Iowa state court decision in Plaintiff's lawsuit against one of Crop USA's sub-agents where the Iowa court found that "Crop USA lacked 'rights' in the commissions owed to [the sub-agent] within the meaning of the California UCC." Id. at 6:18-19. The Iowa court thus ruled Plaintiff could not collect those commissions from the sub-agent. Defs.' Opp'n 19 n.5. As a preliminary matter, this Court is not bound by that court's ruling. Additionally, at issue in this case is Defendants' opinion that Plaintiff had a valid security interest in the Collateral, not in the commissions belonging to that sub-agent.

Neither the Loan documents nor Opinion Letters mention "gross commissions." Defs.' Opp'n 16:4-12; Pl.'s Reply 11:20-23. Instead, Crop USA pledged "Collateral," which is defined as "[a]ll of the assets of CropUSA." Defs.' Mot. 16:2-3. Although Plaintiff notes that the definition includes "all of the right,

48

title and interest of [Crop USA] in and
to . . . commissions" under any "Sales Agent
Agreement," the key terms are that Crop USA must still
have the "right, title and interest" to those
commissions.  See Loan § 1.34.  If Crop USA did not
have rights to the Sub-Agent Commissions—as Plaintiff
describes the Iowa state court holding—then those
commissions are not encompassed in the Collateral or
Plaintiff's security interest.  Inasmuch as Plaintiff
alleges that Crop USA overstated its borrowing base by
including commissions that were not payable to
Plaintiff's Lockbox, TAC ¶ 46(b), Plaintiff has failed
to produce any evidence showing that Defendants were
aware of this or made any representations on the
matter, Defs.' Mot. 18:4-9.  Finally, Defendants did
not opine as to Plaintiff's priority to the Collateral.
2011 Opinion Letter 8; 2013 Opinion Letter 10; see also
Defs.' Reply 18:16-23.

   As a result, the Court finds Defendants did not
breach their duty in this manner because they did not
make any misrepresentation about Plaintiff's security
interest in the Collateral.

               (3) *Consent Required to Pledge Gross*
                           *Commissions*

   In the Opinion Letters, Defendants concluded,
"Neither the execution and delivery of the Transaction
Documents by [Crop USA] nor the consummation of the
transactions contemplated by the Loan Documents,

49

requires an exemption, consent, approval or authorization of . . . any other Person." 2011 Opinion Letter 5; 2013 Opinion Letter 5. Plaintiff argues this was a misrepresentation—and accordingly, a breach of Defendants' duty to Plaintiff—since Crop USA only had title to the Net Commissions, not the Gross Commissions—and would need the sub-agents' consent to pledge the Gross Commissions. Pl.'s Mot. 17:7-12. Because Gatziolis believed that Diversified was obligated to pay a portion of the Gross Commissions to sub-agents, Defendants, at a minimum, had doubts about Crop USA's ability to pledge the Gross Commissions.[13] Id. at 17:9-13. Moreover, Plaintiff contends that the fact that Diversified was allegedly obligated to pay commissions to sub-agents even if Plaintiff declared a default meant that the sub-agents had to consent to the pledge agreement. Pl.'s Opp'n 22:24-27.

Defendants counter that in the Loan, Crop USA pledged all of its assets, i.e., the Collateral. Defs.' Opp'n 18:27-28. Crop USA did not need the sub-agents' consent to this Loan transaction, and Crop USA's ownership rights in the commissions flowing through the Lockbox do not retroactively change that.

---

[13] Like for Plaintiff's Gross Commissions theory, Defendants purport that this Consent theory is unpled and unwarranted for summary judgment. Defs.' Opp'n 18:21-25; see IV Solutions, 2015 WL 12843822, at *14. Citing TAC paragraph 56, Plaintiff argues it already alleged this theory. Pl.'s Reply 18:1-2. However, the Court finds no mention of "consent" or any allegation that could be interpreted as such. Regardless, Plaintiff fails to meet its burden on this theory.

Id. at 18:28-19:5. Defendants argue that Plaintiff conflates "consent to the transaction, on the one hand, and an ultimate right to be paid commissions by Crop [USA], on the other." Defs.' Reply 19:11-14. Further, Defendants dismiss Plaintiff's reliance on the Iowa state court ruling because it "nowhere holds that [the sub-agent's] 'consent' was at issue." Defs.' Opp'n 19 n.5; see also Defs.' Reply 20:13-19.

The Court agrees that under the express language in the Opinion Letters, Defendants opined only to consent to the Loan transactions, not to any occurrence after the fact. Therefore, Plaintiff's argument that Defendants misrepresented the consent needed to pledge Gross Commissions fails. Because Plaintiff has not established anyone's consent was needed to pledge the Collateral or enter into the Loan Agreement, the Court holds that Defendants made no misrepresentation or concealment.

(4) *Borrower's Disclosure Schedule*

Plaintiff also points to a number of alleged misrepresentations made in Crop USA's Disclosure Schedule. As an initial matter, the language in the Opinion Letters does not indicate that Defendants ratified Crop USA's Disclosure Schedule. Cf. Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 131 Cal. Rptr. 2d 777, 789 (Ct. App. 2003)("A misrepresentation can occur through direct statement or through affirmation of a misrepresentation of another,

as when a lawyer knowingly affirms a client's false or misleading statement." (citation omitted)).

First, as discussed, the "Knowledge Qualifier" paragraphs only applied to the portions of the Opinion Letters where Defendants represented their knowledge on the particular issue. Because Plaintiff fails to establish that any of those portions relate to Crop USA's Disclosure Schedule—and more importantly, to the sections Plaintiff alleges were fraudulent—Plaintiff cannot rely on the "Knowledge Qualifier" as the basis of Defendants' liability. See Pl.'s Mot. 17:19-21.

Second, Plaintiff affords undue weight to the "assumptions" Defendants make in the Opinion Letters. See id. In each opinion letter, Defendants "assumed," "[f]or the purposes of this opinion," that (1) the Collateral exists, and Crop USA and Taylor have rights or title to it, (2) all statements in the Loan Documents are true, and (3) all parties complied with any requirement of good faith. 2011 Opinion Letter 3-4; 2013 Opinion Letter 3-4; see also TAC ¶¶ 27(b)-(d), 39(b)-(d). Under customary opinion letter practice, "stated assumptions . . . shift to the opinion recipient the responsibility for confirming the assumed facts for itself or taking the risk that what is assumed might turn out to be untrue." TriBar II Report § 2.3.[14] According to Defendants' expert, Field, use of

[14] The State Bar of California recognizes the TriBar Opinion Committee as "the de facto national standard setter for opinion

52

assumptions informs the recipient that no diligence has been done; the recipient only takes solace in the fact that the assumption will not be used if the opinion giver knows it is or likely is false.  Field Report 21.

Additionally, Defendants argue that the statements in the Disclosure Schedule are not actionable as to Defendants under the agent's immunity rule.  Defs.' Mot. 14:17-21.  The agent's immunity rule absolves an attorney from liability for the client's own representations.  <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, 32 Cal. Rptr. 3d 325, 335 (Ct. App. 2005).  The two exceptions to this rule are where: (1) the attorney breaches an independent duty to the plaintiff; or (2) the attorney's acts surpass the performance of the duty to the client and are done for the attorney's personal financial gain.  <u>Id.</u> (citations omitted).  As discussed, Defendants owed an independent duty not to defraud Plaintiff; thus, the agent's immunity rule is inapplicable.  However, Plaintiff fails to establish a breach of this duty.

Plaintiff fails to show that Defendants owed Plaintiff a duty for the Disclosure Schedule—unlike the Opinion Letters—other than the duty not to defraud others.  Because Defendants made no representations in or as to Crop USA's disclosures, there was no breach. Nor did Defendants sign the Disclosure Schedule or act

practice."  Field Report 11.

in any manner beyond their duty to Crop USA for their own personal gain. Although Defendants billed Crop USA for "preparation of disclosure schedules," Crop USA, not Defendants, made the statements inside the Disclosure Schedule. Janus Capital Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011)("One who prepares or publishes a statement on behalf of another is not its maker.").

(5) *Administrative Agreements as Material Contracts*

In the Loan Agreement, Crop USA did not disclose its Administrative Agreement with AIA, under which Crop USA was obligated to pay AIA's legal expenses. See Loan Agmt. § 10.10. Plaintiff claims that this was a "Material Contract,"[15] so Crop USA needed to disclose it pursuant to the Disclosure Schedule's terms. Pl.'s Mot. 19:5-8. Specifically, the Administrative Agreement requires Crop USA to "pay and account for attorney's fees incurred relating to defense of lawsuits filed against AIA." Administrative Agreement § 4(g), ECF No. 120-7. Plaintiff asserts that clause makes it a "Material Contract" because Crop USA would

---

[15] A "Material Contract" is defined as "any contract . . . to which [Crop USA] is a party as to which the breach, nonperformance, cancellation or failure to renew . . . could have a Material Adverse Effect . . . on (a) the Business . . . assets, liabilities, [or] financial condition . . . , (e) the value of the Collateral or the rights of [Plaintiff] therein, [or] (h) the timely payment of the principal of or interest on the Loan(s)." Loan Agmt. § 1.83. The Loan specifies that "[a]ll determinations of materiality shall be made by [Plaintiff] in its reasonable judgment." Id.

incur legal fees impacting its financial condition and rights to the Collateral if it breached the agreement. Pl.'s Mot. 20:2-5. Defendants counter that the materiality of this agreement is disputed because Taylor was not sure what impact a breach would have, but "Crop [USA] would have continued on." Defs.' Opp'n 23:3-6 (citing Taylor Dep. 91:1-10, ECF No. 139-2).

Because Defendants billed Crop USA for "preparation of disclosure schedules" on November 21, 2011 (two days before the Loan closed), Pl.'s SUF ¶ 52, Plaintiff claims that Defendants knew of this nondisclosure, particularly because Gatziolis had already heard of the Administrative Agreement, Pl.'s Mot. 19:9-13. Merely because Defendants prepared the Disclosure Schedule does not mean that they advised Crop USA as to what to include, Defs.' Opp'n 20:26-27, but they may still be held liable for any corresponding reliance on the nondisclosure in the Opinion Letters. Moreover, when Gatziolis represented Crop USA in an asset purchase agreement with Hudson Insurance Company in 2008, Crop USA disclosed a prior iteration of the Administrative Agreement as a Material Contract. Pl.'s Reply 21:19-25. Although Defendants made no representation in the Disclosure Schedule, Defendants could still be liable for making an assumption in the Opinion Letters that was incompatible with this nondisclosure. Pl.'s Opp'n 18:21-26; see 2011 Opinion Letter 3 (assuming that "all statements, representations and warranties made in the

Loan Documents . . . are true and correct"); 2013
Opinion Letter 4 (same except as to "Amended Loan
Documents").

On the other hand, Defendants argue that Plaintiff
has not presented evidence that Gatziolis knew about
the legal fees provision or whether the Administrative
Agreement was still in effect at the time of the Loan
transactions. Defs.' Opp'n 6:24-7:1. Gatziolis
attested he had never seen the Administrative Agreement
and did not discuss it with anyone to cause him to
remember it at the time of the Loan. Gatziolis Decl.
¶ 4. Plaintiff's only rebuttal is that Gatziolis had
"heard of" the Administrative Agreement before the
Loan, but that does not establish he remembered it or
knew it should be disclosed. See Pl.'s Mot. 19:9-13.
Thus, even assuming this was a "Material Contract,"
Defendants did not breach their duty to Plaintiff by
not revealing it if they were unaware of it or its
materiality.[16]

### (6) *Failure to Disclose Payments to Affiliates*

Gatziolis testified that AIA and Crop USA were
affiliates as defined under the Loan Agreement.

---

[16] Notably, under customary opinion letter practice, an
attorney does not have a duty to investigate. Glazer, FitzGibbon
& Weise, On Legal Opinions § 4.2.3.1 (Aspen 3d ed. 2008).

Gatziolis Dep. 436:11-19, ECF No. 120-14.  And as
discussed, under the Administrative Agreement, Crop USA
was obligated to pay AIA's legal fees.  Finally, the
Disclosure Schedule required Crop USA to list all
affiliates to whom payments could be made under the
Loan Agreement.  Loan Agmt. § 10.10.  Despite the
foregoing, Plaintiff argues that Defendants failed to
disclose to Plaintiff that Crop USA would pay AIA.
Pl.'s Mot. 20:25-28; Pl.'s Reply 23: 11-13.

Defendants respond by asserting that (1) to the
extent Crop USA made legal payments to AIA's counsel,
AIA was obligated to reimburse Crop USA and (2) any
payments were not "Payments to Affiliates," but rather,
expenses posted to an account merely noting the
expenses as "due from" AIA.  Defs.' Opp'n 23:19-28.
Moreover, as discussed, Plaintiff has proferred no
evidence showing that Defendants even knew about this
clause of the Administrative Agreement.  Thus,
Defendants did not breach their duty.

(7) *Litigation Paragraph*

In the Opinion Letters, Defendants advised, "[T]o
our knowledge, there [is] no [lawsuit] pending or
threatened against [Crop USA] that (a) asserts the
invalidity of any Loan Document, (b) seeks to prevent
the consummation of any of the transactions [therein],
[or] (c) . . . might (i) adversely affect the validity
or enforceability of any Loan Document . . . ."  2011
Opinion Letter 5; 2013 Opinion Letter 5 (same except as

to "Amended Loan Documents"). Because Defendants represented their "knowledge" in this paragraph, the "Knowledge Qualifier" applies, meaning that Defendants would be liable if they knew any facts to the contrary.

Defendants argue that this paragraph was accurate in that the only pending cases against Crop USA during the Loan were the <u>John Reed</u> and <u>Donna Taylor</u> cases, which did not seek any ruling related to "the validity or enforceability" of the Loan.[17] Defs.' Mot. 19:16-22. Plaintiff construes the paragraph differently to mean that no litigation was pending that might adversely "impair the collateral." Pl.'s Opp'n 14:18-19, 24:15-16. An adverse ruling in either aforementioned case might have impaired the Collateral because Crop USA would be subjected to "significant monetary damages." ECF No. 118-23 at 61.

The Opinion Letters expressly refer to the "validity or enforceability of the Loan Documents," not Crop USA's financial resources or the Collateral it pledged to Plaintiff. Whether or not Crop USA paid "significant monetary damages" does not have any effect on the validity of the Loan and Plaintiff's ability to enforce it. <u>See, e.g.</u>, <u>Seymour v. Hull & Moreland</u>

---

[17] Plaintiff contests that those were the only two pending cases against Crop USA. Pl.'s Opp'n 14:20-21. However, Plaintiff fails to provide any evidence of other cases. <u>See</u> Pl.'s SSUF ¶¶ 75-76. Even so, the Green Leaf memorandum provided to Plaintiff lists other cases that had been filed against Crop USA, so Plaintiff was on notice of those. Fretty Mot. Decl., Ex. 23 at 93-94; <u>see also</u> Defs.' SUF ¶¶ 18-31.

<u>Eng'g</u>, 605 F.2d 1105, 1113 (9th Cir. 1979) (noting that plaintiffs had "a judgment for several thousand dollars against an insolvent defendant"). Therefore, Defendants did not breach their duty by making a misrepresentation or concealing any litigation as defined in this part of the Opinion Letters.

(8) *Gatziolis' Statements During a Conference Call with Richard Ellis*

In a conference call between Gatziolis and Richard Ellis prior to the 2011 Opinion Letter, Gatziolis advised that the Litigation "had been . . . or was imminently to be finally decided and/or settled, in favor of John Taylor and Crop USA, and that the litigation would have no impact on [the Loan] or the collateral securing that loan, and 'not to worry about it.'" Fretty Mot. Decl., Ex. 25 at 8. Defendants argue that this is not a factual representation, but a "'prediction' that the pending litigation would be resolved in [Crop USA's] favor." Defs.' Mot. 13:7-8. Opinions of future events are not actionable as misrepresentations. <u>Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells</u>, 103 Cal. Rptr. 2d 159, 163 (Ct. App. 2000)(citations omitted). In response, Plaintiff focuses on its reliance on these statements, but fails to rebut that they are not misrepresentations at the outset. Pl.'s Opp'n 5:23-28, 24:15-20. In conclusion, Gatziolis' statements during the conference call are no basis for Defendants' alleged breach.

///

### iii. *Causation*

As with other negligence causes of action, in transactional malpractice cases, the plaintiff must "establish causation by showing either (1) but for the negligence, the harm would not have occurred, or (2) the negligence was a concurrent independent cause of the harm." <u>Viner v. Sweet</u>, 70 P.3d 1046, 1051 (Cal. 2003). Thus, to prevail on the causation element, Plaintiff needs to prove that had Defendants not made the alleged misrepresentations and concealment, Plaintiff would not have proceeded with the Loan. <u>See</u> TAC ¶ 67. Essentially, Plaintiff needs to show it reasonably relied on Defendants' actions. <u>OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.</u>, 68 Cal. Rptr. 3d 828, 855 (Ct. App. 2007). Additionally, Defendants must have proximately caused Plaintiff's harm. <u>Id.</u> at 860-61 (citation omitted).

"Reasonable reliance, judged 'in light of the plaintiff's intelligence and experience,' remains the standard in fraudulent misrepresentation actions, and California courts . . . take [this standard] quite seriously." <u>Atari Corp. v. Ernst & Whinney</u>, 981 F.2d 1025, 1031 (9th Cir. 1992). If the plaintiff possesses facts demonstrating that the representations are "patently and obviously false," reliance is "manifestly unreasonable," and the misrepresentations were not the cause of the plaintiff's injury. <u>Id.</u>

Because the Opinion Letters state that no one other than the lender shall be entitled to rely on them, Plaintiff claims its reliance as the lender was justified.  Pl.'s Mot. 23:17-25; <u>see also</u> 2011 Opinion Letter 10; 2013 Opinion Letter 11.  Moreover, Gatziolis testified that Defendants knew Plaintiff would rely on the Opinion Letters.  Steinman Mot. Decl., Ex. Q at 76:17-22.  Finally, in a law firm brochure, Defendants represent that they are "a group of highly skilled attorneys," providing "sophisticated legal services to clients."  Pl.'s Mot. 25:6-8; Steinman Mot. Decl., Ex. T at 97-98.  Based on the foregoing, Plaintiff argues "there was nothing that was so 'patently and obviously false' to alert [Plaintiff] that [Defendants] lacked the requisite 'skill and knowledge' to write an accurate and honest opinion letter."  Pl.'s Mot. 25:12-14.

Regardless of whether reliance arguably would have been justified, Defendants point out that, in the instant case, Plaintiff could not have relied on any alleged omissions because Plaintiff had actual knowledge of the Litigation.  Defs.' Mot. 24:14-18.  Plaintiff received reports and a warning from Crop USA that the Litigation was ongoing.  Defs.' SUF ¶¶ 22-24, 28-30; Fretty Mot. Decl., Ex. 23 at 93-94.  Although Plaintiff asserts that the impact of the Litigation, not the Litigation itself, should have been disclosed, Plaintiff's "intelligence and experience" as a lender

makes it unreasonable for Plaintiff to have entered into the Loan—whilst knowing about the Litigation—on a belief that the Litigation would have no impact on Crop USA's finances.  This is particularly true because the Green Leaf memorandum, which Plaintiff received, expressed that Crop USA might owe "significant monetary damages."  Fretty Mot. Decl., Ex. 23 at 61.

Furthermore, in an internal memorandum circulated in July 2012, Plaintiff recognized that Crop USA was paying over 90% of its commissions from Diversified back to sub-agents.  Defs.' Opp'n 24:21-25; Fretty Opp'n Decl., Ex. 2 at 2.  Yet Plaintiff increased Crop USA's borrowing amount to $8 million eight days after issuing the memorandum and to $10 million in February 2013.  Id. at 24:27-25:1.  Plaintiff's knowledge as such conflicts with its alleged interpretation that the Collateral included Sub-Agent Commissions, so Plaintiff could not have reasonably—let alone actually—relied on that interpretation.  In its Reply, Plaintiff sidesteps this point by asserting its reliance on Defendants' alleged statements that "no consent" was required for Crop USA to pledge the "Gross Commissions."  Pl.'s Reply 24:20-25:1.  But as discussed, the Opinion Letters only discussed consent as to Collateral, which did not mean "Gross Commissions."  Therefore, Plaintiff fails to rebut this issue.

Contrary to Plaintiff's argument that Defendants need to prove their "statements were 'obviously

false,'" Pl.'s Reply 25:10-11, Plaintiff needed to show that its reliance was justified as the party with the burden at trial. Moreover, if Plaintiff's interpretation of the statements was "obviously false," then it would be unreasonable for Plaintiff to rely on that interpretation, regardless of the falsity of the statements. Here, it was unreasonable for Plaintiff to rely on its interpretation of the Opinion Letters due to the notice it had to the contrary. <u>See also</u> <u>Hadland v. NN Inv'rs Life Ins. Co.</u>, 30 Cal. Rptr. 2d 88, 95 (Ct. App. 1994)(holding that reliance on representations conflicting with "the express provisions of the written contract" was "unjustified as a matter of law"). In sum, Defendants were neither the "but for" nor proximate cause of Plaintiff's harm.

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's professional malpractice claim.[18]

> b. *Intentional Misrepresentation*

The next issue is whether Defendants made any intentional misrepresentation as a matter of law. To establish intentional misrepresentation, the claimant must prove the following: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." <u>Cisco Sys., Inc. v.</u>

---

[18] The parties do not discuss, and the Court need not rule on, damages because Defendants satisfied their burden that no reasonable juror could find for Plaintiff on either the breach or causation elements. <u>In re Oracle Corp.</u>, 627 F.3d at 387.

STMicroelectronics, Inc., 77 F. Supp. 3d 887, 897 (N.D. Cal. Dec. 29, 2014)(citing Lazar v. Sup. Ct., 909 P.2d 981 (Cal. 1996)).

As discussed, Plaintiff fails to establish any misrepresentation by Defendants inside or outside the Opinion Letters. See supra Part II.B.4.a.ii. Therefore, Defendants had no knowledge of any alleged falsity or intent to induce Plaintiff's reliance on that falsity. Moreover, similar to the causation element of professional malpractice, Plaintiff did not actually or justifiably rely on any of the representations. As a result, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion as to Plaintiff's intentional misrepresentation cause of action.

### c. *Negligent Misrepresentation*

Next, the Court must decide, as a matter of law, whether Defendants made a negligent misrepresentation. The elements of negligent misrepresentation are the same as of intentional misrepresentation, other than that the former requires "a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true," as opposed to "knowledge of falsity." Cisco Sys., 77 F. Supp. 3d at 897. Additionally, under California law, "'omissions' or nondisclosures cannot give rise to liability for negligent misrepresentation." Id. (citation omitted).

As discussed, Defendants made no affirmative

misrepresentations.  <u>See</u> <u>supra</u> Part II.C.4.a.ii.
Therefore, even assuming Defendants omitted information
from Plaintiff, they would not be liable for negligent
misrepresentation.  <u>See</u> <u>supra</u> Part II.B.4.a.ii.  The
reasonableness of their belief in the truth of their
statements is of no significance because there was no
misrepresentation.  As a result, the Court **GRANTS**
Defendants' Motion and **DENIES** Plaintiff's Motion for
the negligent misrepresentation claim.

        d.  *Concealment*

The final issue is whether Plaintiff showed
concealment as a matter of law.  A concealment cause of
action requires proof of the following elements:
(1) concealment of a material fact; (2) duty to
disclose the fact; (3) intent to defraud; (4) the
plaintiff was unaware of the fact and would have acted
differently if the plaintiff knew; and (5) resulting
damage.  <u>Falk v. Gen. Motors Corp.</u>, 496 F. Supp. 2d
1088, 1097 (N.D. Cal. 2007)(quoting <u>Lovejoy v. AT&T</u>
<u>Corp.</u>, 14 Cal. Rptr. 3d 117 (Ct. App. 2004)).

As discussed, Defendants did not conceal or
suppress any material fact in breach of a duty.  <u>See</u>
<u>supra</u> Part II.B.4.a.ii.  Additionally, Plaintiff has
not shown fraudulent intent, and Defendants have proved
that Plaintiff was aware of all allegedly concealed
facts.  Thus, the Court **GRANTS** Defendants' Motion and
**DENIES** Plaintiff's Motion as to the concealment cause
of action.

### III. CONCLUSION

Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment [116] and **DENIES** Plaintiff's Motion for Partial Summary Judgment [120]. Additionally, the Court **DENIES** Defendants' Motion to Strike Stanley W. Lamport's Expert Report [114], **DENIES AS MOOT** Plaintiff's Motion to Strike Robert L. Kehr's Expert Report [113], and **DENIES AS MOOT** Defendants' Motion to Strike Portions of Douglas E. Johnston, Jr.'s Expert Report [115].

**IT IS SO ORDERED.**

DATED: September 13, 2017          s/ RONALD S.W. LEW

                                               **HONORABLE RONALD S.W. LEW**
                                               senior U.S. District Judge